71 Cal.Rptr.3d 864 (2008)
159 Cal.App.4th 831
ESTATE OF William Earl GARRETT, Deceased.
Brandi Lahara, Objector and Appellant,
v.
Darryl Freeman, Petitioner and Respondent.
No. E042054.
Court of Appeal of California, Fourth District, Division Two.
January 31, 2008.
*866 Robert L. Kern, Pomona, and Darla P. Gretzner for Objector and Appellant.
Tremain & Hoffman, Heather Tremain and Nancy A. Hoffman for Petitioner and Respondent.

*865 OPINION
McKINSTER J.
Objector and appellant Brandi L. LaHara is the daughter of the decedent, William E. Garrett. LaHara had sought letters of administration of decedent's intestate estate. The probate court granted the petition of petitioner and respondent Darryl Freeman, the nominee of Gwendolyn Garrett, the decedent's surviving spouse. We affirm the probate court's order awarding letters of administration to Freeman, the nominee of the surviving spouse.

FACTS AND PROCEDURAL HISTORY
Decedent married Gwendolyn Garrett (hereafter Garrett) in 1975. There were no children of the marriage; LaHara, decedent's daughter, and Freeman, Garrett's son, had each been born before the marriage. Garrett separated from decedent in 1978. Decedent resided in California and Garrett moved to the East Coast. In 1979, Garrett filed an action in Washington, D.C. for dissolution of the marriage. She did not pursue the matter, however, because "[m]y husband did not want the divorce." Garrett never acted to dismiss the dissolution case in Washington, D.C. She received notification from the court that it would be dismissed unless she continued to prosecute the case; she did nothing, and was informed that the matter had been dismissed by the court.
In 2001, decedent purchased a home in California. Garrett exacted a payment of $15,000 from decedent to "sign off' on the purchase to allow decedent to take title as his separate property.
The decedent died on March 13, 2006. LaHara filed a petition for special letters of administration. She stepped in because the insurer of decedent's home had cancelled the property insurance on the ground that the home was "vacant." LaHara obtained an order granting her special letters of administration.
Garrett's son Freeman, however, soon filed a petition for letters of administration. Garrett claimed priority as the surviving spouse. She declined to serve herself, but nominated Freeman. LaHara filed a petition for issuance of permanent letters. Freeman objected to LaHara's appointment. LaHara objected to Freeman's petition.
The court heard the contested matter on October 2, 2006. Garrett testified as the only witness. The parties filed additional briefs and the court ultimately appointed Freeman as administrator.
LaHara appeals.

ANALYSIS
The crux of the matter is: Which party has priority for appointment as the administrator under the intestate succession provisions? Under Probate Code section 8461, a surviving spouse has priority over all other persons. Probate Code section 8461 is subject to section 8463, however, which provides: "If the surviving spouse is a party to an action for separate maintenance, annulment, or dissolution of the marriage of the decedent and the surviving spouse, and was living apart from the decedent on the date of the decedent's death, the surviving spouse has priority next after *867 brothers and sisters and not the priority prescribed by Section 8461."
LaHara argues that Garrett's having filed an action for dissolution in Washington, D.C. renders her a "party to an action for ... dissolution of the marriage" for purposes of Probate Code section 8463. The parties agree that Garrett was "living apart from the decedent on the date of the decedent's death." LaHara contends that the filing of the old dissolution action changed Garrett's priority from that of a surviving spouse to the priority prescribed in Probate Code section 8463.

I. Standard of Review

The question we are called upon to determine involves the application of statutes to undisputed facts. It thus presents a question of law which we review de novo. (Walker v. Allstate Indemnity Co. (2000) 77 Cal.App.4th 750, 754, 92 Cal.Rptr.2d 132.)

II. Principles of Statutory Construction

"In construing a statute, our fundamental task is to ascertain the Legislature's intent so as to effectuate the purpose of the statute. (Day v. City of Fontana (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196].) We begin with the language of the statute, giving the words their usual and ordinary meaning. (Ibid.) The language must be construed `in the context of the statute as a whole and the overall statutory scheme, and we give "significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose."' (People v. Canty (2004) 32 Cal.4th 1266, 1276 [14 Cal.Rptr.3d 1, 90 P.3d 1168].) In other words, `"we do not construe statutes in isolation, but rather read every statute "with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' [Citation.]"' (In re Marriage of Harris (2004) 34 Cal.4th 210, 222 [17 Cal.Rptr.3d 842, 96 P.3d 141].) If the statutory terms are ambiguous, we may examine extrinsic sources, including the ostensible objects to be achieved and the legislative history. (Day v. City of Fontana, supra, 25 Cal.4th at p. 272 [105 Cal. Rptr.2d 457, 19 P.3d 1196].) In such circumstances, we choose the construction that comports most closely with the Legislature's apparent intent, endeavoring to promote rather than defeat the statute's general purpose, and avoiding a construction that would lead to absurd consequences. (Ibid.)" (Smith v. Superior Court (2006) 39 Cal.4th 77, 83, 45 Cal. Rptr.3d 394, 137 P.3d 218.)

III. Garrett Had the Priority of a Surviving Spouse

The purpose of the provision for priority is to "plac[e the administration of the estate] in the hands of persons most likely to manage the estate property to the best advantage of those beneficially interested." (Estate of Kaseroff (1977) 19 Cal.3d 272, 276, 137 Cal.Rptr. 644, 562 P.2d 325.) The policy is clear that the surviving spouse has first priority, above all others.
"The surviving spouse, when entitled to succeed to the estate or some portion thereof, is given first preference. This right is absolute and the court has no right to refuse to appoint the survivor or to appoint another in a lower class." (Estate of Hirschberg (1964) 224 Cal.App.2d 449, 461, 36 Cal.Rptr. 661.) Of course, this right is not truly "absolute," as it is subject to other principles: For example, the person seeking letters of administration must be mentally competent, either to serve as administrator or to nominate another. (See Estate of Waltz (1966) 244 Cal.App.2d 217, 221-222, 52 Cal.Rptr. 880.) In addition, it is possible to waive the right to priority of appointment. (See Estate of *868 Muller (1969) 2 Cal.App.3d 259, 272-273, 82 Cal.Rptr. 531.) Nonetheless, the surviving spouse is entitled to preference to letters of administration, unless he or she is shown incompetent on some statutory ground. (Estate of Johnson (1920) 182 Cal. 642, 643,189 P. 280.)
Here, Garrett, the surviving spouse, declined appointment for herself, but nominated Freeman. Probate Code section 8465 provides that a person otherwise entitled to appointment as the administrator may nominate another person, and that if the person making the nomination is a member of certain priority classes (e.g., surviving spouse, child, grandchild, parent, sibling), then the nominee has priority "next after those in the class of the person making the nomination." (Prob.Code, § 8465, subd. (b).) Garrett, the surviving spouse, had first priority; her nominee, Freeman, was next in priority after her. LaHara, decedent's child, was in a class of priority after the surviving spouse. (Prob. Code, § 8461, subd. (b).)
LaHara argues that, pursuant to Probate Code section 8463, Garrett was statutorily disqualified from asserting the priority of a surviving spouse. Probate Code section 8463 provides: "If the surviving spouse is a party to an action for ... dissolution of the marriage ... and was living apart from the decedent on the date of the decedent's, death, the surviving spouse has priority next after brothers and sisters and not the priority prescribed in Section 8461."
Here, the evidence was undisputed that Garrett and the decedent separated in 1978. They lived "separate and apart" from that time until the decedent's death, some 28 years later. Garrett herself acknowledged that, although she sometimes saw decedent, they never resumed their marital relationship.
The key question, therefore, is whether Garrett falls within the definition of a "surviving spouse" who "is a party to an action for ... dissolution of the marriage ..." within the meaning of Probate Code section 8463. (Italics added.) LaHara maintains that, because Garrett had filed a dissolution action in Washington, D.C, in 1979, she "is a party" to such an action, notwithstanding the dismissal of the dissolution action at some time after 1979. Garrett contends that once the action was dismissed by the Washington, D.C. court for failure to prosecute, there was no longer any action pending; while she "was" a party to such an action in 1979, she "is" not a party to any such pending proceeding.
The whole matter "depends on what the meaning of the word `is' is." (CNN.com, allpolitics.com> resources, Documents from Independent Counsel Ken Starr, Released 9/21/98, Vol. Ill, tab 16, 8/17/98 Grand Jury Testimony of President William Jefferson Clinton, at p. 510 [as of Aug. 23, 2007].)
We give the words of the statute their plain and ordinary meaning. (Estate of Griswold (2001) 25 Cal.4th 904, 911, 108 Cal.Rptr.2d 165, 24 P.3d 1191.) As Garrett argues, "[h]ad the Legislature intended to limit a spouse's priority because at one time he or she had been a party to an action to dissolve the marriage, then it would have used the word `was,' instead of 'is,' before the words `a party to an action' in the first sentence of ... section 8463." We agree. Even having filed such an action and being a present party to such an action does not alter the priority of the surviving spouse unless he or she was living apart from the decedent at the time of the decedent's death. The Legislature obviously contemplated that spouses may at one time file an action to dissolve their relationship, but later change their minds. Here, that change of mind was not manifested *869 by resuming cohabitation with the decedent, but by the termination of the dissolution action. Garrett testified that she abandoned the dissolution action, and she took no further steps to prosecute it. She abandoned the action because decedent did not want a divorce. She was informed by the court that the action would be dismissed, and so far as appears, it was dismissed for failure to prosecute in approximately 1980.
A dismissal terminates an action. (Hagan Engineering, Inc. v. Mills (2003) 115 Cal.App.4th 1004, 1007, 9 Cal.Rptr.3d 723, citing Code Civ. Proc., § 581.) The dismissal of an entire action deprives the court of subject matter jurisdiction of the matter, as well as of personal jurisdiction over the parties. (Casa de Valley View Owner's Assn. v. Stevenson (1985) 167 Cal. App.3d 1182, 1192, 213 Cal.Rptr. 790.) As Garrett argues, "without an action pending, there can be no `party' to an action."
LaHara argues to the contrary. "When an action is filed, the parties are defined. A dismissal does not determine that a person is not a party to the action...." LaHara proposed a hypothetical to "demonstrate the absurdity of the position taken [by] Garrett. Assume ... that, as in this matter where Gwendolyn Garrett and the decedent have been separated for 28 years and she has filed an action, but assume that the action has not been dismissed but she has heard that the decedent is on his deathbed. If Gwendolyn Garrett then runs down to the courthouse and manages to file a dismissal just before the decedent draws his last breath, should she be entitled to restoration of the priority provided by Probate Code Section 8461? Of course not."
We are not persuaded of this "absurdity." LaHara assumes that dismissing an action before the decedent has died "restores" a priority that has somehow already been "lost." This is a false assumption. Priority under Probate Code sections 8461 or 8463 cannot be determined until there is a death and a decedent. It is the circumstances prevailing at the time of death, and not before, that determine the priority of a surviving spouse.
Probate Code section 8463 plainly contemplates the possibility that spouses who have filed a dissolution action may have changed their minds. They may have changed their minds informally, indicated by resuming living together, without necessarily having formally dismissed the dissolution action. That change of mind is reflected in the second requirement of Probate Code section 8463, that the surviving spouse retains the priority of a surviving spouse if, notwithstanding a pending dissolution action, the spouses are living together at the date of death. Where a surviving spouse has indicated that change of mind by formally dismissing the dissolution action, however, that change of mind should be no less honored than an informal change of mind. We believe that such a formal change of mind is reflected in the first requirement of Probate Code section 8463, that the surviving spouse retains the priority of a surviving spouse unless he or she "is" a party to an action for dissolutionthat is, "is presently" a party to a pending action.
Here, although Garrett did not voluntarily dismiss the action herself, she deliberately abandoned the action, and she did so because decedent did not want the divorce. If decedent had been unhappy about that state of affairs, he could, at any time in the ensuing 28 years of separation, have filed an action himself for separation, annulment or dissolution. He never did so.
Although Garrett "was" a party to an action for dissolution in 1979, that action was dismissed and terminated in 1980. She was not a party to an active, pending *870 dissolution action for the succeeding 26 years, up to and including the date of decedent's death. Decedent still referred to Garrett as his "wife" in various correspondence, and took no steps himself to terminate her status as his spouse. Garrett was entitled to the first priority accorded to a surviving spouse.
Because Garrett was a surviving spouse, entitled to first priority, her nomination of Freeman was next in priority after her. Probate Code section 8463 did not apply to deprive her, or him, of that priority. The trial court properly issued the letters of administration to Freeman.

IV. The Failure to Issue a Statement of Decision Is Not Reversible Error

LaHara also complains that, although she requested a statement of decision below, both orally and in her post-hearing brief, the probate court failed to issue any such statement. She argues that the failure to issue a statement of decision on request requires reversal. (Citing Miramar Hotel Corp. v. Frank B. Hall & Co. (1985) 163 Cal.App.3d 1126, 1129, 210 Cal. Rptr. 114.) As Garrett points out, however, Code of Civil Procedure section 632, concerning statements of decision, applies to the determination of questions of fact, not to questions of law. Where the only issue is one of law, reversal for failure to issue a statement of decision is not required. (Palm v. Schilling (1988) 199 Cal. App.3d 63, 67, 244 Cal.Rptr. 600.)

DISPOSITION
For the reasons stated, the order issuing letters of administration to Freeman is affirmed.
We concur: HOLLENHORST, Acting P.J., and GAUT, J.