Filed 1/22/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| GEORGE VRANISH, JR., et al., | B243443 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC450074) |
| v. | |
| EXXON MOBIL CORPORATION, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Mark V. Mooney, Judge. Affirmed.

Van Vleck Turner & Zaller and Brian F. Van Vleck for Plaintiffs and Appellants.

Stradling Yocca Carlson & Rauth, Jeffrey A. Dinkin, John F. Cannon and Gannon E. Johnson for Defendant and Respondent.

_____

Labor Code section 514[1] provides, in relevant part: "Sections 510 and 511 do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage."

Plaintiffs George Vranish, Jr., and Steve Teague are employees of defendant Exxon Mobil Corporation (Exxon). They are represented by a labor organization and their employment is governed by the terms of a collective bargaining agreement (CBA). At issue in this litigation is whether plaintiffs are owed monies for overtime hours worked. According to plaintiffs, the CBA does not provide for premium compensation for all "overtime hours worked" (§ 514), as the word "overtime" is defined by section 510. Thus, Exxon has not satisfied the requirements of section 514 and owes plaintiffs monies for overtime. According to Exxon, the CBA meets the requirements of section 514; because section 514 expressly provides that the daily overtime requirements of section 510 do not apply to employees covered by a valid collective bargaining agreement such as the one here, it owes plaintiffs nothing.

This appeal presents a legal question: Does Labor Code section 510's definition of "overtime" apply to employees covered by a valid collective bargaining agreement (§ 514)? Based upon the plain language of section 514, legislative history, an opinion from the Department of Industrial Relations, Division of Labor Standards Enforcement (DLSE), and public policy, we conclude that section 510 does not apply to section 514. Accordingly, we affirm the trial court's award of summary judgment to Exxon.

---

[1] All further statutory references are to the Labor Code unless otherwise indicated.

**FACTUAL AND PROCEDURAL BACKGROUND**

*The Parties*

Plaintiffs are Exxon employees. During their entire period of employment, plaintiffs have worked at Exxon's on-shore facility near Gaviota, California (the Santa Ynez unit).

Plaintiffs are represented by a labor organization. Since at least 1989, the Exxon Employees Federation-Western Division, also known as Federation of Santa Ynez Unit Exxon Employees (the Federation) has been the exclusive bargaining representative for all production and maintenance employees at the Santa Ynez unit (the Covered Employees), including plaintiffs. Also since at least 1989, the CBA has been in effect between Exxon and the Federation pertaining to all Covered Employees, including plaintiffs.

*Relevant Terms of the CBA*

Consistent with the CBA, plaintiffs each worked a regularly scheduled workweek that required them to work more than eight hours in a 24-hour period. In accordance with the CBA and schedule, plaintiffs were each regularly scheduled to work seven 12-hour shifts in a seven-day period and then have seven days off.

The Federation and Exxon also agreed, as part of the CBA, that the workweek would be Monday at 12:01 a.m. through Sunday at midnight. It was further agreed in the CBA that the scheduled seven 12-hour shifts worked by employees in plaintiffs' classification would begin at 6:00 a.m. on Thursday and end at 6:00 p.m. on the following Wednesday for day shift employees, and start at 6:00 p.m. on Wednesday and end at 6:00 a.m. on the following Thursday for night shift employees.

*Compensation*

It is undisputed that plaintiffs were compensated for all overtime worked in accordance with the CBA. Specifically, plaintiffs were each paid at the overtime premium rate of one and one-half times their regular rate of pay for hours worked over 40 hours in a workweek or over 12 hours in a workday. The CBA provides that overtime is not paid for hours worked between eight and 12 in a workday.

3

*Procedural History*

Plaintiffs filed their initial class action complaint on November 23, 2010, and their first amended complaint on March 11, 2011. A second amended complaint, the operative pleading, was filed on September 22, 2011. It alleges three causes of action: failure to pay overtime wages in violation of section 510; violation of the California unfair practices law (Bus. & Prof. Code, § 17200); and violation of the private attorney general act (§ 2698).

Exxon filed its motion for summary judgment on February 14, 2012. The motion was heard on May 3, 2012. Following supplemental briefing, further argument was heard on May 22, 2012, at which time the trial court granted Exxon's motion. The trial court reasoned: "Plaintiffs' contention is fundamentally flawed because it fails to acknowledge that they are completely exempt from section 510 by the collective bargaining exception contained in section 514, as well as under section 510[, subd.] (a)(2). The plain language of sections 514 and 510[, subd.] (a)(2), the legislative history, the relevant case law, a 1991 DSLE Opinion Letter, and the Statement As To The Basis for the amendments to the Wage Orders following the adoption of AB 60 confirm that section 514, as well as section 510[, subd.] (a)(2), provide a complete exception to the overtime requirements of section 510[, subd.] (a) upon which Plaintiffs' claims are based. Therefore, the undisputed material facts establish that Plaintiffs' claims for additional overtime compensation under Labor Code section 510 fails as a matter of law."

The trial court further found that section 514 applied because the requirements for coverage under that section had been met. And, the collective bargaining agreement exception under section 510, subdivision (a)(2), also applied because plaintiffs worked an alternative workweek schedule that was adopted pursuant to the CBA. Thus, even if section 514 did not entirely exempt plaintiffs from the overtime provisions of section 510, subdivision (a), their claim for daily overtime would have failed because they were exempted pursuant to section 510, subdivision (a)(2).

Judgment for Exxon was entered, and plaintiffs' timely appeal ensued.

4

# DISCUSSION

I. *Standard of review*

As the parties agree, we review the trial court's order de novo. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334; *Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 619 [de novo review of an order granting summary judgment along with the trial court's resolution of any underlying issues of statutory construction].)

II. *Because plaintiffs are covered by a qualifying collective bargaining agreement, section 510's definition of "overtime" does not apply*

Section 510, subdivision (a), provides, in relevant part: "Eight hours of labor constitutes a day's work." The statute continues to set forth the payment of overtime compensation. (§ 510, subd. (a).)

Section 514, titled "Exempt employees," provides, in relevant part: "Section[] 510 . . . do[es] not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage."

Plaintiffs do not dispute that the CBA is a valid collective bargaining agreement; that the CBA provides for wages, hours of work, and working conditions for Covered Employees, including plaintiffs; and that the CBA provides for a regular hourly rate of pay for Covered Employees, including plaintiffs, which is not less than 30 percent more than the State of California minimum wage requirement. Plaintiffs also do not dispute that the CBA provides premium wage rates for all overtime hours worked as designated in the CBA. At issue in this appeal is whether the phrase "all overtime hours worked" in section 514 means "overtime" as defined in section 510, subdivision (a); said otherwise, was Exxon required to pay plaintiffs overtime, as that word is defined in section 510, subdivision (a), or was it only required to pay a premium for overtime work as that word is defined in the CBA?

"'In construing a statute, our fundamental task is to ascertain the Legislature's intent so as to effectuate the purpose of the statute. [Citation.] We begin with the language of the statute, giving the words their usual and ordinary meaning. [Citation.] The language must be construed "in the context of the statute as a whole and the overall statutory scheme, and we give 'significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose.'" [Citation.] In other words, "'we do not construe statutes in isolation, but rather read every statute "with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." [Citation.]'" [Citation.] If the statutory terms are ambiguous, we may examine extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] In such circumstances, we choose the construction that comports most closely with the Legislature's apparent intent, endeavoring to promote rather than defeat the statute's general purpose, and avoiding a construction that would lead to absurd consequences. [Citation.]' [Citation.]" (*Estate of Garrett* (2008) 159 Cal.App.4th 831, 836.)

"'It is elementary that, if possible, statutes will be so construed as to avoid absurd applications and to uphold their validity. [Citation.] A statute "will not be given an interpretation in conflict with its clear purpose . . . ." [Citations.]'" (*People v. Bratis* (1977) 73 Cal.App.3d 751, 757–758.) Otherwise stated: "'We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*People v. Coronado* (1995) 12 Cal.4th 145, 151.)

With these principles in mind, we conclude that the CBA satisfies the fourth requirement of section 514, namely that it provides "premium wage rates for all overtime hours worked." As set forth above, the CBA provides for premium wages.[2] Nothing in

---

[2]     We reiterate that it is undisputed that plaintiffs were paid the contractual premium rate for overtime hours worked.

6

section 514 requires Exxon to look to the definition of "overtime" as that word is defined in section 510, subdivision (a).**3**

Even if section 514 were ambiguous, legislative history supports our conclusion. "[B]oth the language of Senate Bill 1208 and its legislative history confirm that it had never been the Legislature's intent to exclude union-represented employees from any of the protections of the 1999 Restoration Act *other than the overtime and alternative workweek provisions of sections 510* and 511." (*Lazarin v. Superior Court* (2010) 188 Cal.App.4th 1560, 1575–1576, italics added; see also *Valles v. Ivy Hill Corp.* (9th Cir. 2005) 410 F.3d 1071, 1079 [citing legislative history and noting that section 514 was "intended to exempt workers covered by a collective bargaining agreement from 'specified code sections relating to compensation for overtime work and authorizing the adoption of an alternative workweek schedule'"].) For example, the Assembly Committee on Labor and Employment's statement issued in connection with its June 20, 2001, hearing on Senate Bill 1208 notes that "AB 60 [the bill predecessor to section 514] was intended to provide that an employee covered by [a qualifying collective bargaining agreement] was not covered by requirements for daily overtime, an alternative workweek procedure, and one day's rest in seven." (Assem. Com. on Labor and Employment, Analysis of Sen. Bill No. 1208 (2000-2001 Reg. Sess.) as amended June 14, 2001, p. 1.) Similarly, the Assembly Committee on Appropriations issued the following statement on July 11, 2001: "[T]he provisions of AB 60 that require overtime pay after eight hours per day, and provide for the adoption of an alternative workweek schedule, do not apply to an

---

**3**      Plaintiffs' reliance upon *Arechiga v. Dolores Press, Inc.* (2011) 192 Cal.App.4th 567 is misplaced. The *Arechiga* court considered a private mutual wage agreement and the impact of section 515 (*Arechiga*, at pp. 572–573); collective bargaining agreements and section 514 were not at issue.

At oral argument, plaintiffs relied heavily upon *Gregory v. SCIE* (9th Cir. 2003) 317 F.3d 1050. Aside from the fact that this case was not cited in plaintiffs' opening appellate brief, the case is of no assistance. The issue in *Gregory* was federal preemption. (*Id*. at pp. 1051, 1053.)

employee covered by a qualifying collective bargaining agreement." (Assem. Com. on Appropriations, Analysis of Sen. Bill No. 1208 (2000-2001 Reg. Sess.) as amended June 14, 2001, p. 1.)

Our interpretation makes sense. Employees, such as plaintiffs, represented by a labor union, "have sought and received alternative wage protections through the collective bargaining process." (*Firestone v. Southern California Gas Co.* (9th Cir. 2000) 219 F.3d 1063, 1067.) When there is a valid collective bargaining agreement, "[e]mployees and employers are free to bargain over not only the *rate* of overtime pay, but also *when* overtime pay will begin. Moreover, employees and employers are free to bargain over not only the timing of when overtime pay begins *within a particular day*, but also the timing *within a given week*. The Legislature did not pick and choose which pieces of subparagraph (a) will apply or not apply. Instead, the Legislature made a categorical statement that 'the requirements of this section,' meaning this section *as a whole*, do not apply to employees with valid collective bargaining agreements." (*Wylie v. Foss Maritime Co.* (N.D.Cal., Sept. 4, 2008, No. C-06-7228-MHP) 2008 U.S. Dist. Lexis 76607, *49.)

And, our conclusion is bolstered by an opinion of the DLSE. (*Seymore v. Metson Marine, Inc.* (2011) 194 Cal.App.4th 361, 369, fn. 5 [while advisory opinions issued by the DLSE are not controlling, they "'"'do constitute a body of experience and informed judgment to which courts . . . may properly resort for guidance"'"'"].) In a 1991 opinion letter, the DLSE noted: "Obviously, in providing the exemption from the overtime obligation in the case of workers who are covered by a collective bargaining agreement containing the minimum standards outlined above, the [Industrial Welfare] Commission recognized that workers under those circumstances were probably adequately protected by their collective bargaining agent's representation." (DLSE Opn. Letter No. 1991.04.02 (Apr. 2, 1991) at pp. 2-3.) The opinion letter further notes that in a collective bargaining agreement situation, the definition of the word "'overtime'" is left to the parties, the rationale being that the worker is adequately protected. (DLSE Opn. Letter No. 1991.04.02, *supra*, at p. 3, fn. 2.)

8

Consistent is the DLSE's construction as set forth in its Enforcement Policies and Interpretations Manual. As set forth therein, the purpose of section 514 is to provide "an opt-out provision which allows parties to collective bargaining agreements to provide any premium wage over the regular rate for any overtime work performed as long as the cash hourly rate of pay provided to the employees is at least thirty percent over the current minimum wage." (DLSE Manual, § 50.7.1 (2002).) And, in discussing the definition of overtime hours for employees covered by section 514, the "DLSE interprets the term 'overtime hours' to mean any hours which the collective bargaining agreement treats as overtime hours payable at a premium rate. It is not necessary, however, that the collective bargaining agreement provide the same premium rates . . . as required by the California law." (DLSE Manual, § 50.7.1.1 (2002).) "[S]o long as the collective bargaining agreement establishes regular and overtime hours within the work week, establishes premium pay for all such hours worked, and the regular rate of pay is more than (30) percent above the minimum wage, then the exemption established by . . . § 514 is applicable." (DLSE Manual, p. 16 (2002).)

In urging us to reverse, plaintiffs argue that the CBA does not satisfy the requirements of the Fair Labor Standards Act (FLSA), which cannot be waived, even through collective bargaining. The CBA meets FLSA requirements. Under the FLSA, the term "workweek" is defined as "a fixed and regularly recurring period of 168 hours— seven consecutive 24-hour periods. It need not coincide with the calendar week but may begin on any day and at any hour of the day." (29 C.F.R. § 778.105 (2012).) Exxon's workweek meets this standard—the schedule of seven consecutive shifts worked by plaintiffs overlaps two workweeks, resulting in 48 hours being worked in one workweek and 36 hours being worked in the other workweek.

Furthermore, the FLSA requires that employees be paid at an overtime rate for all hours worked over 40 hours in a workweek. (29 C.F.R. §§ 778.101, 778.102 (2012).) As set forth above, the CBA provides for overtime compensation and it is undisputed that Exxon complied with the CBA's requirements for overtime compensation by paying plaintiffs for all overtime hours worked. Thus, the FLSA was not violated, and the cases

9

cited by plaintiffs are inapposite.  (See, e.g., *Barrentine v. Arkansas-Best Freight System, Inc.* (1981) 450 U.S. 728.)

In sum, we hold that plaintiffs were employees covered by a valid CBA that satisfied the requirements of section 514.  As such, pursuant to the plain statutory language, and guided by legislative history and opinions and comments from the DLSE, we conclude that the phrase "overtime hours worked" is not defined by section 510.

III.  *Because plaintiffs worked an alternative workweek schedule that was adopted pursuant to, and part of, a collectively bargained for agreement, section 510's definition of "overtime" does not apply*

Alternatively, Exxon was entitled to summary judgment because plaintiffs worked pursuant to an alternative workweek schedule adopted as part of the CBA.

Section 510, subdivision (a)(2), provides that the requirements of section 510, subdivision (a), do not apply to the payment of overtime compensation to an employee working pursuant to an "alternative workweek schedule adopted pursuant to a collective bargaining agreement pursuant to Section 514."  Section 500, subdivision (c), defines "alternative workweek schedule" as "any regularly scheduled work-week requiring an employee to work more than eight hours in a 24-hour period."

Here, it is undisputed that plaintiffs worked a regularly scheduled workweek that required them to work more than eight hours in a 24-hour period.  It is also undisputed that the alternative workweek schedule they worked was adopted pursuant to, and was part of the CBA.  Accordingly, plaintiffs worked an alternative workweek schedule as defined by section 500, subdivision (c), which was adopted pursuant to the CBA, thereby meeting the requirements of section 510, subdivision (a)(2).  (*Wylie v. Foss Maritime Co.*, *supra*, 2008 U.S. Dist. Lexis 76607, at \*49–\*50; *Cathcart v. Sara Lee Corp.* (N.D.Cal., Nov. 30, 2011, No. C-09-5748-MMC) 2011 U.S. Dist. Lexis 137352, at \*14–\*15 [if the parties to a CBA agree to an alternative workweek schedule, the CBA, rather than section 510, defines what work constitutes overtime hours for purposes of section 514].)

IV.  There *is no triable issue of fact as to whether Exxon artificially manipulated plaintiffs' workweek and work schedules*

"'An employer may not engage in a subterfuge or artifice designed to evade the overtime laws'" or scheduling practices "designed primarily to evade overtime compensation." (*Seymore v. Metson Marine, Inc.*, *supra*, 194 Cal.App.4th at p. 370; see also *Huntington Memorial Hospital v. Superior Court* (2005) 131 Cal.App.4th 893, 910.)

Relying upon this principle, plaintiffs argue that we must reverse the trial court order and judgment because Exxon deliberately and artificially manipulated plaintiffs' workweek and work schedules for the primary purpose of avoiding statutory overtime payments.  But, plaintiffs failed to present any evidence of Exxon's allegedly improper motive. (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 162–163 [in order to defeat a motion for summary judgment, the responding party must produce "substantial responsive evidence sufficient to establish a triable issue of material fact on the merits"].) The trial court sustained Exxon's objections to plaintiffs' attempt to introduce such evidence, and plaintiffs do not challenge the trial court's evidentiary rulings on appeal. Plaintiffs' speculation as to Exxon's intent is unavailing. (*Sanchez v. Swinerton & Walberg Co.* (1996) 47 Cal.App.4th 1461, 1466.)

## DISPOSITION

The trial court's judgment is affirmed. Exxon is entitled to costs on appeal.

## CERTIFIED FOR PUBLICATION.


_____, J.
                ASHMANN-GERST


We concur:


_____, P. J.
       BOREN


_____, J.*
       FERNS

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.