Filed 8/27/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| IGNACIO ARAQUISTAIN et al.,<br><br>      Plaintiffs and Appellants,<br>v.<br><br>PACIFIC GAS & ELECTRIC COMPANY,<br><br>      Defendant and Respondent. | A138487<br><br>(Alameda County<br>Super. Ct. No. RG12627084) |

With certain exceptions, California's Labor Code[1] requires an employer to provide to an employee who works more than five hours "a meal period of not less than 30 minutes." (§ 512, subd. (a).) This provision does not apply to an employee of an electrical or gas corporation who is covered by a valid collective bargaining agreement that, inter alia, "expressly provides for meal periods for those employees." (§ 512, subds. (e), (f)(4).) The question before us is whether a contract that provides that employees who work shifts of eight consecutive hours "shall be permitted to eat their meals during work hours and shall not be allowed additional time therefore at Company expense" falls within the exception provided in section 512, subdivision (e)—that is, whether the contract "expressly provides for meal periods." We answer that question in the affirmative, and accordingly affirm the trial court's grant of summary judgment to the employer.

---

[1] All undesignated statutory references are to the Labor Code.

## I.  BACKGROUND

Plaintiffs Ignacio Araquistain, David Page, and Douglas Girouard are hourly employees of defendant Pacific Gas & Electric Company (PG&E), which the parties agree is an "electrical corporation" and a "gas corporation" for purposes of section 512, subdivision (f)(4).[2]  They are members of a union, and their employment is covered by a collective bargaining agreement (the Agreement) entered into by PG&E and the union. Each of them has worked "Consecutive Hour" shifts—that is, shifts of at least eight hours' duration, in which all hours are compensable and the employee is not provided an unpaid meal period.  The applicable contractual provision, Title 104.13 of the Agreement, states:  "Notwithstanding any of the foregoing provisions, shift employees and other employees whose workday consists of eight consecutive hours shall be permitted to eat their meals during work hours and shall not be allowed additional time therefore at Company expense."[3]

All three plaintiffs submitted declarations.  Araquistain testified in his declaration that his duties consisted of responding to emergencies and hazards, responding to customer calls, performing routine service work, upgrading and maintaining electrical panels, and performing field inspections.  On his consecutive hour shifts, he had to eat while on duty, and could do so only if eating would not interfere with the performance of his duties.  At times, service calls were so frequent that he could not eat at all for the whole shift; other times, he had time only to buy food and eat it in the truck while filling out paperwork.  Page testified that he was a power plant technician and was responsible for operating and maintaining engines and associated equipment at a generating station. He often ate his meals while monitoring computer screens, and he could not go outside

---

[2] The parties stipulated to most of the relevant facts.

[3] Pursuant to side agreements, the terms of Title 104.13 of the Agreement have been made applicable to consecutive hour shifts of more than eight hours.

2

the plant to eat because if he did so, he would be too far away to respond to an emergency. Girouard was a shift control technician at a power plant, whose duties included installation, maintenance, and repair of plant systems and equipment. During his consecutive hour shifts, he was always on duty, and he had to respond immediately to directions to perform work. He ate while on duty, and was often contacted while eating to perform work. He usually ate at his desk and listened for incoming messages directing him to perform work or alerting him to conditions that required his attention.

Until April 1, 2011, PG&E had a Missed Meal Payment program under which it paid missed meal payments to plaintiffs when they were unable to take a duty free, uninterrupted 30-minute meal period during a consecutive hour shift. PG&E discontinued the program on that date. This action was taken in response to amendments to section 512 that had recently gone into effect, which will be discussed below.

In this action, plaintiffs allege PG&E is required by law to provide off-duty meal breaks to its employees. They seek civil penalties, damages for failure to pay the minimum wage, restitution for unfair business practices, declaratory relief, an accounting, and attorney fees. As its first affirmative defense, PG&E asserts the claims are barred by Labor Code section 512, subdivisions (e) through (g), which, it alleges, "exclude[] Plaintiffs and all other similarly situated employees from the meal period requirements of Labor Code § 512(a) and the Wage Orders." As their second affirmative defense, PG&E alleges the claims are barred because the contracts provide for a voluntary on-duty meal period pursuant to Industrial Welfare Commission (IWC) wage order No. 4-2001, subdivision 11(A) (Cal. Code Regs., tit. 8, § 11040, Wage Order No. 4).

Plaintiffs moved for summary adjudication that these affirmative defenses had no merit, and PG&E moved for summary judgment based on its first affirmative defense. The trial court granted PG&E's motion for summary judgment and denied plaintiffs' motion for summary adjudication.

3

## II.  DISCUSSION

### A.  Standard of Review

The standard of review of a summary judgment motion in favor of a defendant is well settled.  We "independently assess the correctness of the trial court's ruling by applying the same legal standard as the trial court in determining whether any triable issues of material fact exist, and whether the defendant is entitled to judgment as a matter of law."  (*Rubin v. United Air Lines, Inc.* (2002) 96 Cal.App.4th 364, 372.)  Here, the dispositive facts are undisputed, and the question is one of statutory interpretation.  "It is well settled that the interpretation and application of a statutory scheme to an undisputed set of facts is a question of law [citation] which is subject to de novo review on appeal [citation.]."  (*Rudd v. California Casualty Gen. Ins. Co.* (1990) 219 Cal.App.3d 948, 951.)

### B.  Statutory and Regulatory Background

Section 512, subdivision (a), provides in pertinent part:  "An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes . . . ."  An employer who fails to provide an employee with a meal or rest period in accordance with a state law or applicable regulation or order of, *inter alia*, the IWC, must pay the employee an additional hour of pay for each workday the meal period is not provided.  (§ 226.7, subd. (c); *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1104 (*Murphy*); see also Wage Order No. 4, subd. 11(B).)

In Assembly Bill 569, the Legislature added subdivisions (e) through (g) to section 512.  (Stats. 2010, c. 662, § 1, pp. 3727–3728.)[4]  As relevant here, these amendments provide that section 512, subdivision (a) does not apply to an employee of an electrical

---

[4] For the sake of convenience, we shall occasionally refer to the amendments to section 512 as "AB 569."

4

corporation or gas corporation "if both of the following conditions are satisfied: [¶] (1) The employee is covered by a valid collective bargaining agreement. [¶] (2) the valid collective bargaining agreement expressly provides for the wages, hours of work, and working conditions of employees, and *expressly provides for meal periods for those employees*, final and binding arbitration of disputes concerning application of its meal period provisions, premium wage rates for all overtimes hours worked, and a regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate." (§ 512, subds. (e) & (f)(4), italics added.)

Subdivision 11(A) of Wage Order No. 4, promulgated by the IWC,[5] provides: "No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee. *Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked.* An 'on duty' meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time." (Italics added.) PG&E did not assert in its motion for

_____

[5] The IWC is "empowered to formulate regulations (known as wage orders) governing employment in the State of California." (*Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 561; see also *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1026 (*Brinker*) ["wage and hour claims are today governed by two complementary and occasionally overlapping sources of authority: the provisions of the Labor Code, enacted by the Legislature, and a series of 18 wage orders, adopted by the IWC."].) Wage Order No. 4 is applicable to "all persons employed in professional, technical, clerical, mechanical, and similar occupations." (Wage Order No. 4, subd. 1.)

5

summary judgment that the undisputed facts show that Wage Order No. 4 provides a defense to this action, and it does not do so on appeal.

## C. Does the Agreement Expressly Provide for Meal Periods?

Plaintiffs contend that under the plain language of AB 569, the Agreement's provision that consecutive hour employees "shall be permitted to eat their meals during work hours and shall not be allowed additional time therefore at Company expense" does not "expressly provide[] for meal periods." (§ 512, subd. (e)(2).) According to plaintiffs, the Agreement provides for "meals" but not "meal periods"; a "meal period," they argue, is "a period of time—i.e., with a beginning and an end[]—when an employee is not required to work."

For this argument, plaintiffs rely heavily on our Supreme Court's decision in *Brinker*, *supra*, 53 Cal.4th 1004. There, the court considered the nature of an employer's duty to provide meal periods, and concluded that "an employer's obligation is to relieve its employee of all duty, with the employee thereafter at liberty to use the meal period for whatever purpose he or she desires, but the employer need not ensure that no work is done." (*Id*. at p. 1017.) In reaching this conclusion, the court discussed the difference between an on-duty and an off-duty meal period. The court noted that a wage order applicable to the workers in question there, which contained identical relevant language to that in Wage Order No. 4 (see *Brinker,* at pp. 1018 & fn. 1, 1035) "spells out the nature of ' "on duty" ' meals period and the precise circumstances in which they are permitted. It follows that absent such circumstances, an employer is obligated to provide an 'off-duty' meal period. The attributes of such off-duty meal periods are evident from the nature of their reciprocal, on-duty meal periods. An on duty meal period is one in which an employee is not 'relieved of all duty' for the entire 30-minute period. [Citation.] An off-duty meal period, therefore, is one in which the employee '*is* relieved of all duty during [the] 30 minute meal period.' [Citation.] Absent circumstances permitting an on-

6

duty meal period, an employer's obligation is to provide an off-duty meal period: an uninterrupted 30-minute period during which the employee is relieved of all duty." (*Id.* at p. 1035.) The IWC's wage orders, the high court explained, "have long made a meal period's duty-free nature its defining characteristic"; the defining characteristic of an on-duty meal period is "failing to relieve an employee of duty." (*Id.* at pp. 1035, 1039.)

As we have explained, section 512, subdivision (a) requires an employer generally to provide "a meal period of not less than 30 minutes" after an employee has worked five hours; subdivision (e)(2) of that section provides that subdivision (a) does not apply if, inter alia, a valid collective bargaining agreement "expressly provides for meal periods." Plaintiffs urge us to rely on *Brinker* to conclude that the term "meal periods" in section 512, subdivision (e)(2) means a period of time in which an employee is relieved of all duty. The problem with this contention is that the high court in *Brinker* did not consider the effect of section 512, subdivision (e)(2), which by its terms provides for an *exception* to the general requirement that an employer must provide a meal period of at least 30 minutes to an employee who has worked the requisite amount of time.

The question before us, then, is whether we must construe the term "meal periods" in subdivision (e)(2) in the same way as the term is used in subdivision (a); that is, whether the meal periods included in a collective bargaining agreement that meets the requirements of subdivision (e)(2)—and that thereby establishes an exception to subdivision (a)—must have the same characteristics as the meal periods required by subdivision (a). Plaintiffs are forced to concede that in some ways, the answer to this question is no. For instance, they agree that a collectively bargained meal period that complies with subdivision (e)(2) need not necessarily be a full 30 minutes, begin before the end of the fifth hour of work, or even be completely free of all employer control. But they contend the "irreducible core meaning" of a meal period is the same in both contexts—"a discrete amount of time when an employee is relieved of work duties." In

7

doing so, they rely in part on the general presumption that " 'when a word is used in a particular sense in one part of a statute, it is intended to have the same meaning if it appears in another part of the same statute.' " (*Delaney v. Baker* (1999) 20 Cal.4th 23, 41.)

" ' "In construing a statute, our fundamental task is to ascertain the Legislature's intent so as to effectuate the purpose of the statute.  [Citation.]  We begin with the language of the statute, giving the words their usual and ordinary meaning.  [Citation.]  The language must be construed 'in the context of the statute as a whole and the overall statutory scheme, and we give "significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." '  [Citation.]  In other words, ' "we do not construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.'  [Citation.]" '  [Citation.]  If the statutory terms are ambiguous, we may examine extrinsic sources, including the ostensible objects to be achieved and the legislative history.  [Citation.]  In such circumstances, we choose the construction that comports most closely with the Legislature's apparent intent, endeavoring to promote rather than defeat the statute's general purpose, and avoiding a construction that would lead to absurd consequences.  [Citation.]" [Citation.]' " (*Vranish v. Exxon Mobil Corp.* (2014) 223 Cal.App.4th 103, 109–110 (*Vranish*).)  We construe statutes governing conditions of employment broadly in favor of protecting employees.  (*Kirby v. Immoos Fire Protection, Inc.* (2012) 53 Cal.4th 1244, 1250.)

*Vranish* is instructive on the question of whether a "meal period" must have the same meaning for purposes of the rule (§ 512, subd. (a)) as for the exception to the rule (§ 512, subd. (e)(2)).  Two statutes were at issue in *Vranish*.  Section 510, subdivision (a) provides that a work day consists of eight hours of labor, and sets forth requirements for the payment of overtime compensation.  (*Vranish*, *supra*, 223 Cal.App.4th at p. 109.)  It

8

also provides, "The requirements of this section do not apply to the payment of overtime compensation to an employee working pursuant to . . . [¶] . . . [¶] (2) [a]n alternative workweek schedule adopted pursuant to a collective bargaining agreement pursuant to Section 514." (§ 510, subd. (a).) Section 514, in turn, provides: "Section[] 510 . . . do[es] not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." The plaintiffs in *Vranish* were covered by a collective bargaining agreement, under which they were regularly scheduled to work seven 12-hour shifts in a seven-day period and then have seven days off; thus, they worked more than eight hours in a 24-hour period. (*Vranish*, *supra*, 223 Cal.App.4th at p. 107.) The agreement provided that Exxon, the employer, would pay overtime compensation for hours worked over 40 hours in a workweek or over 12 hours in a workday. Overtime was not paid for hours between eight and 12 in a workday. (*Ibid*.) The plaintiffs contended they were entitled to overtime compensation as the word "overtime" was defined in section 510, i.e., the hours over eight in a workday. (*Vranish*, *supra*, 223 Cal.App.4th at p. 106.)

The Court of Appeal framed the question in this way: "whether the phrase 'all overtime hours worked' in section 514 means 'overtime' as defined in section 510, subdivision (a); said otherwise, was Exxon required to pay plaintiffs overtime, as that word is defined in section 510, subdivision (a), or was it only required to pay a premium for overtime work as that word is defined in the [collective bargaining agreement]?" (*Vranish*, *supra*, 223 Cal.App.4th at p. 109.) The court concluded, "Nothing in section 514 requires Exxon to look to the definition of 'overtime' as that word is defined in section 510, subdivision (a)." (*Id*. at p. 110.) This result, the court went on, was

9

supported by the legislative history, which indicated an intent to exclude union-represented employees from the overtime provisions of section 510. (*Id.* at pp. 110–111.) Moreover, the court reasoned, "[o]ur interpretation makes sense. Employees, such as plaintiffs, represented by a labor union, 'have sought and received alternative wage protections through the collective bargaining process.' [Citation.] When there is a valid collective bargaining agreement, '[e]mployees and employers are free to bargain over not only the *rate* of overtime pay, but also *when* overtime pay will begin. Moreover, employees and employers are free to bargain over not only the timing of when overtime pay begins *within a particular day*, but also the timing *within a given week*. The Legislature did not pick and choose which pieces of subparagraph (a) will apply or not apply. Instead, the Legislature made a categorical statement that "the requirements of this section," meaning this section *as a whole*, do not apply to employees with valid collective bargaining agreements.' " (*Id.* at p. 111.)

The case before us, of course, involves a different statute and a different worker protection. The question we face, however, is similar: whether the phrase "meal period" in subdivision (e)(2) of section 512 means "meal period" as used in subdivision (a) of the same section—that is, whether it necessarily means that the employee is, for a period, relieved of work duties. We conclude it does not. We recognize that the requirement for meal periods was originally adopted for reasons of worker health and safety. (*Murphy*, *supra*, 40 Cal.4th at p. 1113.) However, subdivision (e)(2) provides an *exception* to the ordinary rule that an employer must provide meal periods of a specified time after a specified amount of work; that is, it provides that where a collective bargaining agreement meets certain requirements, subdivision (a) "do[es] not apply." It would make no sense to conclude that subdivision (a)'s requirements apply to an employee who is explicitly exempted from them. Rather, AB 569 authorizes collectively bargained agreements that provide alternate meal period arrangements.

10

Both parties draw our attention to the legislative history of AB 569 to support their view of the statute. The United Parcel Service sponsored the bill, explaining that its drivers needed more flexible timing for meal periods in case they were caught in traffic or were in an unsafe neighborhood at the time their meal period was to be taken. (Assem. Com. on Labor and Employment, Analysis of Assem. Bill No. 569 (2009–2010 Reg. Sess.) as amended April 27, 2009, p. 2.) As originally introduced, AB 569 would have added a new section 512.7 to the Labor Code, providing that in the transportation industry, the parties to a valid collective bargaining agreement covering commercial drivers could establish, by agreement, "[a]n off-duty meal period that commences after not more than six hours of work," and "[t]he circumstances under which commercial drivers may qualify for an on-duty meal period." (Assem. Bill No. 569 (2009–2010 Reg. Sess.) as introduced Feb. 25 2009, § 1.) The bill was later amended to add a proposed subdivision (e) to section 512, providing that if a construction worker was "covered by a valid collective bargaining agreement that regulates off-duty and on-duty meal periods and includes a monetary remedy if the employee does not receive a meal period required by the agreement," then the provisions of the agreement pertaining to meal periods would apply, rather than the otherwise applicable statutes and wage order. (Assem. Bill No. 569 (2009–2010 Reg. Sess.) as amended April 2, 2009, § 1.) By later amendments, the specification of "off-duty and on-duty meal periods" was eliminated, the current language was added, and the changes were applied to employees of other industries, including electrical and gas corporations. (§ 512, subds. (e)(2) & (f); Assem. Bill No. 569 (2009–2010 Reg. Sess.) as amended April 27, 2009, § 1; Assem. Bill No. 569 (2009–2010 Reg. Sess.) as amended June 16, 2010, § 1.)

The Legislature was also informed by supporters of the bill that under existing law, employers were forced to monitor their employees to ensure they took their meal periods without interruption. (See, e.g., Jamie Khan, Associated General Contractors,

11

memorandum to Members of the Assembly, May 21, 2009; Tim Cremins, California-Nevada Conference of Operating Engineers, letter to Hon. Kevin de Leon, Chair of Assembly Appropriations Committee, May 12, 2009.)

This legislative history shows that the bill was intended to increase meal period flexibility in certain industries, and that the bill would also address, to some degree, the problem of forced monitoring of employee meal periods. The history also indicates that the Legislature was aware of the distinction between on-duty and off-duty meal periods, and chose not to specify that the "meal periods" mentioned in section 512, subdivision (e) must be an off-duty meal period. To the limited extent this history illuminates the issue before us, it provides some support for our conclusion that alternate meal period arrangements, including meal periods that might take place while an employee is on duty, are permissible where the other requirements of section 512, subdivision (e) are met.

The question remains, does a collective bargaining agreement providing that employees "shall be permitted to eat their meals during work hours" "expressly provide[] for meal periods for those employees"? (§ 512, subd. (e)(2).) We conclude that it does. The parties to the Agreement expressly made alternate arrangements to allow covered employees time to eat their meals. This conclusion comports with the clear intent of the Legislature to afford additional flexibility with regard to the terms of employment of employees in certain occupations, so long as their interests are protected through a collective bargaining agreement. It appears to us that when employees, "represented by a labor union, 'have sought and received alternative wage protections through the collective bargaining process,' " (*Vranish*, *supra*, 223 Cal.App.4th at p. 111), they are free to bargain over the terms of their meal period, including whether the meal period will

12

be of a specified length and whether employees will be relieved of all duty during that time.[6]

We therefore conclude that the trial court correctly granted summary judgment to PG&E on the ground that the Agreement meets the requirements of section 512, subdivision (e), and that as to the covered workers, PG&E is therefore exempted from the requirements of subdivision (a) of that statute.[7]

---

[6] The parties disagree over the effect of a 2001 Memorandum of Disposition of a grievance of Gas Service Representatives (the GSR Disposition). The GSR's in question worked shifts of eight consecutive hours, and their contract provided, in language identical to that at issue here, that they were permitted to eat their meals during work hours and would not be allowed additional time to do so at company expense. The GSR Disposition noted the requirements for on-duty meals periods imposed by the wage order in effect at the time and explained: "The disagreement stems from developing a working definition of an on-duty meal . . . . There is no such things as a 'meal-on-the-fly' or a 'bun-on-the-run', and driving while eating is never appropriate. Committee members agreed that GSRs should eat when they can while they are on the job, preferably somewhere near the mid-point of their shift, and remain available. There is no scheduled 30-minute lunch period, nor is there an entitlement to 30 minutes to consume a meal each workday. A meal may take 15 minutes or 20 minutes to consume on any give occasion, but under no circumstance should an employee take more than 30 minutes to eat." PG&E contends the GSR disposition was incorporated into the contract as a side agreement, and shows that employees are entitled to stop working in order to eat their meals, although they remain " 'on the job' in the sense that the employee is still being paid." Plaintiffs disagree. The GSR Disposition was prepared well before AB 569 was passed, and by its terms considered the requirements for on-duty meal periods, which were governed by the applicable IWC work order. As we have explained, the parties agree that for purposes of this appeal, the current IWC work order governing on-duty meal periods, Wage Order No. 4, is not dispositive, and indeed, there is no evidence before us that the meal period meets the requirements of that work order, which mandate that "the nature of the work prevents an employee from being relieved of all duty" and that the written agreement "state[s] that the employee may, in writing, revoke the agreement at any time." (Wage Order No. 4, § 11(A).) Accordingly, we do not find the GSR Disposition helpful in our analysis.

[7] Our conclusion, of course, does not leave employees who are unable to eat their meals during work hours without a remedy. As we have discussed, the collective-bargaining agreement provides that employees whose work day is eight consecutive

13

## III.    DISPOSITION

The judgment is affirmed.

---

hours "shall be permitted to eat their meals during work hours." If these employees find they are unable to eat their meals during work hours, they may seek redress through the five-step grievance procedure set forth in the agreement.

_____

Rivera, J.

We concur:

_____

Reardon, P. J.

_____

Humes, J.*

* Presiding Justice of the Court of Appeal, First Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

A138487

<u>Araquistain et al. v. Pacific Gas & Electric (A138487)</u>

Trial court:          Alameda County

Trial judge:         Hon. Wynne Carvill

Attorneys:

Leonard Carder, LLP and Philip C. Monrad, Aaron Kaufmann, and Jennifer Keating for Plaintiffs and Appellants.

Littler Mendelson P.C. and Robert G. Hulteng, Damon M. Ott, and Joshua D. Kienitz for Defendant and Respondent