**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CARL CURTIS, an individual; ARTHUR WILLIAMS, *Plaintiffs-Appellants*, <br><br> v. <br><br> IRWIN INDUSTRIES, INC., a California corporation; DOES, 1 through 100, inclusive, *Defendants-Appellees*. | No. 16-56515 <br><br> D.C. No. 2:15-cv-02480-ODW-E <br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
Otis D. Wright II, District Judge, Presiding

Argued and Submitted October 9, 2018
Pasadena, California

Filed January 25, 2019

Before: Sandra S. Ikuta and John B. Owens, Circuit
Judges, and Haywood S. Gilliam, Jr.,[*] District Judge.

Opinion by Judge Ikuta

---

[*] The Honorable Haywood S. Gilliam, Jr., United States District Judge for the Northern District of California, sitting by designation.

## SUMMARY[**]

### Labor Law

The panel affirmed in part the district court's dismissal of a wage-and-hour suit and remanded in part.

Plaintiffs worked for a company that conducted operations on oil platforms located off the coast of California, on the Outer Continental Shelf. The panel held that plaintiffs' claim for overtime pay was preempted under § 301 of the Labor Management Relations Act because California overtime law does not apply to an employee working under a qualifying collective bargaining agreement; therefore, plaintiffs' right to overtime existed solely as a result of their CBAs.

The panel remanded to the district court to review meal and rest period and minimum wage claims, as well as derivative claims, and address issues of preemption under § 301 and the Outer Continental Shelf Lands Act, as well as issues of California labor law.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Michael A. Strauss (argued) and Aris E. Karakalos, Strauss & Strauss APC, Ventura, California, for Plaintiffs-Appellants.

Ronald J. Holland (argued), Ellen M. Bronchetti, and Christopher M. Foster, DLA Piper LLP, San Francisco, California, for Defendant-Appellee.

**OPINION**

IKUTA, Circuit Judge:

Carl Curtis brought a putative class action lawsuit against his former employer, Irwin Industries (Irwin), alleging that Irwin denied him overtime pay, failed to give him meal and rest periods, and failed to pay him minimum wage for the 12 hours he was off duty.[1] Curtis's claim for overtime pay is preempted under § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, because California overtime law does not apply to an employee working under a qualifying collective bargaining agreement, Cal. Lab. Code § 514, and Curtis worked under such an agreement. We remand Curtis's remaining claims to the district court to address in the first instance.

---

[1] Arthur Williams is also a named plaintiff. However, because he raises the same arguments as Curtis, and the specific facts of his work for Irwin are not relevant to our disposition of the case, we refer only to Curtis in this appeal.

I

Curtis is a former employee of Irwin, a company that conducts operations on oil platforms located off the coast of California, on the Outer Continental Shelf.[2]  While working for Irwin, Curtis was regularly scheduled to work seven 12-hour shifts in a seven-day period, with twelve hours on duty, followed by twelve hours off duty.

As a member of United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, Local 1945 (Union), Curtis was subject to two collective bargaining agreements (CBAs) between the Union and Irwin:  the National Master Agreement by and between Irwin's Operations Group and the Union, and the National Master Agreement by and between Irwin's Maintenance and Construction Group and the Union. Both agreements include detailed provisions regarding wages, overtime, and hours, as well as provisions requiring employees to grieve and arbitrate disputes concerning the application and terms of the CBAs.

Without using the dispute-resolution provisions of the CBAs, Curtis filed a putative class action complaint against Irwin in California state court.  The complaint was based on Curtis's theory that his 12 off-duty hours counted as "hours worked" for purposes of California labor laws, *see* Cal. Lab. Code § 510, because, as a practical matter, he was unable to leave the oil platform during that time.  Curtis relied on a recent California Supreme Court case holding that security guards were "entitled to compensation for all on-call hours

---

[2] Curtis worked for Irwin from approximately December 2013 to April 2014.

spent at their assigned worksites under their employer's control." *Mendiola v. CPS Sec. Sols., Inc.*, 60 Cal. 4th 833, 836 (2015). Extending *Mendiola*'s reasoning from on-call hours to off-duty hours, Curtis argues that Irwin violated various California wage and hour laws by failing to recognize his 12 hours of off-duty time as "hours worked." Specifically, the complaint alleges that Irwin denied him overtime pay for the 12 hours he was off duty, *see* Cal. Lab. Code § 510, failed to give him meal and rest periods for that period, *see* Cal. Lab. Code §§ 226.7, 512, and failed to pay him minimum wage for that period, *see* Cal. Lab. Code §§ 1194, 1197. The complaint also raised four claims that are derivative of his overtime, meal and rest period, and minimum wage claims.[3]

Irwin removed the action to district court, relying on § 301 of the LMRA, 29 U.S.C. § 185, and the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. § 1331–1356b, as the basis for federal jurisdiction. Once in federal court, Irwin filed a motion to dismiss on the ground that Curtis's claims are preempted by § 301 of the LMRA. In his opposition, Curtis raised a number of arguments, including his contentions that the CBAs did not apply at all because their scope does not extend to work conducted on the Outer Continental Shelf; California's minimum wage and hour standards are not preempted by § 301 of the LMRA

---

[3] These derivative claims are: (1) failure to provide an accurate pay stub, Cal. Lab. Code § 226(e); (2) engaging in unfair business practices, Cal. Bus. & Prof. Code § 17200; (3) failure to pay the correct wages at termination, Cal. Lab. Code § 201; and (4) a demand for civil penalties under California's Private Attorneys General Act, Cal. Lab. Code § 2699. These claims can succeed only if Curtis prevails on his claims that Irwin violated California labor law by failing to recognize his 12 off-duty hours as "hours worked," *see* Cal Lab. Code § 510.

under binding state and federal precedents; Curtis's overtime and meal break claims were not precluded by section 514 of the California Labor Code; and California law applied to the Outer Continental Shelf.

The district court granted Irwin's motion to dismiss. The court based this conclusion solely on the ground that there was a need to interpret the CBAs in order to resolve the parties' dispute regarding their applicability, and therefore the state law claims were preempted by § 301 of the LMRA. Additionally, the district court ordered the parties to proceed to arbitration under the terms of the applicable CBAs.

Curtis filed a motion for reconsideration, arguing that his claims were founded on non-negotiable state-law rights that are independent of the CBAs. In his reply to Irwin's opposition, Curtis stated, for the first time: "Plaintiffs are willing to concede that the CBAs *are* generally applicable to Plaintiffs because such a concession has zero effect on their ultimate rights to pursue their statutorily-guaranteed rights in court—a right that exists independently of these CBAs."

Given the timing and minimal nature of this concession, it is not surprising that the district court missed it. Accordingly, the district court affirmed its dismissal of Curtis's claims as preempted under § 301 on the ground that Curtis disputed the applicability of the CBAs, and it would be necessary to give the CBAs "more than merely a cursory reading to determine whether they actually apply to [Curtis's] claims." The court did not address any other basis for preemption. However, the district court retracted the order to arbitrate.

Curtis timely appealed.  The district court had jurisdiction under 29 U.S.C. § 185(c),[4] and we have jurisdiction under 28 U.S.C. § 1291.  We review de novo a district court's dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Puri v. Khalsa*, 844 F.3d 1152, 1157 (9th Cir. 2017).  We accept "all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009) (internal quotations marks and citation omitted).

II

The central dispute on appeal is whether Curtis's claims, which he styles as state law claims, are preempted by § 301 of the LMRA.  Section 301 provides that "[s]uits for violation of contracts between an employer and a labor organization . . .  may be brought in any district court of the United States."  29 U.S.C. § 185(a).  Although § 301 contains no express language of preemption, the Supreme Court has long interpreted the LMRA as authorizing federal courts to create a uniform body of federal common law to adjudicate disputes that arise out of labor contracts. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985); *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103–04 (1962).  Thus, any suit "alleging a violation of a provision of a labor contract must be brought under § 301 and be resolved by reference to federal law." *Lueck*, 471 U.S. at 210.  "A state rule that purports to define the meaning or scope of a term in a contract suit therefore is

---

[4] Irwin asserts that the district court had jurisdiction pursuant to OCSLA as well.  Because we hold that jurisdiction over the overtime claim was proper under § 301 of the LMRA, we do not address whether complete preemption exists under OCSLA.

pre-empted by federal labor law." *Id.* Although normally federal preemption is a defense that does not authorize removal to federal court, § 301 has such "extraordinary pre-emptive power" that it "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metro. Life Ins. v. Taylor*, 481 U.S. 58, 65 (1987). In other words, a civil complaint raising claims preempted by § 301 raises a federal question that can be removed to a federal court. *See id.*

As explained in *Alaska Airlines Inc. v. Schurke*, federal preemption under § 301 "is an essential component of federal labor policy" for three reasons. 898 F.3d 904, 917–18 (9th Cir. 2018) (en banc). First, "a collective bargaining agreement is more than just a contract; it is an effort to erect a system of industrial self-government." *Id.* at 918 (internal quotation marks and citations omitted). Thus, a CBA is part of the "continuous collective bargaining process." *United Steelworkers v. Enter. Wheel & Car Corp. (Steelworkers III)*, 363 U.S. 593, 596 (1960). Second, because the CBA is designed to govern the entire employment relationship, including disputes which the drafters may not have anticipated, it "calls into being a new common law—the common law of a particular industry or of a particular plant." *United Steelworkers v. Warrior & Gulf Navigation Co. (Steelworkers II)*, 363 U.S. 574, 579 (1960). Accordingly, the labor arbitrator is usually the appropriate adjudicator for CBA disputes because he was chosen due to the "parties' confidence in his knowledge of the common law of the shop and their trust in his personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment." *Id.* at 582. Third, grievance and arbitration procedures "provide certain procedural benefits, including a more prompt and orderly settlement of CBA

disputes than that offered by the ordinary judicial process." *Schurke*, 898 F.3d at 918 (internal quotation marks and citations omitted).

While § 301 preemption furthers important interests, the Supreme Court has stressed that "§ 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994). To extend § 301 preemption beyond its defined role "would be inconsistent with congressional intent." *Lueck*, 471 U.S. at 212. For this reason, "[s]etting minimum wages, regulating work hours and pay periods, requiring paid and unpaid leave, protecting worker safety, prohibiting discrimination in employment, and establishing other worker rights remains well within the traditional police power of the states," and claims alleging violations of such protections will not necessarily be preempted, even when the plaintiff is covered by a CBA. *Schurke*, 898 F.3d at 919–20.

To ensure that § 301 preemption "extends only as far as necessary to protect the role of labor arbitration in resolving CBA disputes," we employ a two-step test. *Id.* at 913–14. First, we ask whether the asserted cause of action involves a "right [that] exists solely as a result of the CBA." *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016) (quoting *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007)). The essential inquiry is this: Does the claim seek "purely to vindicate a right or duty created by the CBA itself[?]" *Schurke*, 898 F.3d at 921. If so, "then the claim is preempted, and [the] analysis ends there." *Burnside*, 491 F.3d at 1059.

But if not, we proceed to the second step and ask "whether a plaintiff's state law right is substantially dependent on analysis of [the CBA]," which turns on whether the claim cannot be resolved by simply "look[ing] to" versus "interpreting" the CBA. *Kobald*, 832 F.3d at 1033 (internal quotation marks and citations omitted). We have stressed that "interpretation" is construed narrowly in this context. *See Schurke*, 898 F.3d at 921. At this second step of the analysis, "claims are only preempted to the extent there is an active dispute over 'the meaning of contract terms.'" *Id.* (quoting *Livadas*, 512 U.S. at 124). Accordingly, a state law claim may avoid preemption if it does not raise questions about the scope, meaning, or application of the CBA. *See Livadas*, 512 U.S. at 125.

## III

We first apply this framework to Curtis's claims that Irwin violated California labor law by failing to recognize his 12 off-duty hours as "hours worked," *see* Cal Lab. Code § 510(a), in order to determine whether these claims are preempted by § 301 of the LMRA.

We begin with Curtis's claim that Irwin violated section 510(a) of the California Labor Code, which provides a default rule for overtime.[5] This section provides that any work in

---

[5] California Labor Code section 510(a) states, in pertinent part:

(a) Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate

excess of a specified number of hours "shall be compensated" at a specified rate of pay. Cal. Lab. Code § 510(a). Curtis argues that Irwin violated this section by failing to pay him the required overtime rates for the 12 hours he spent off-duty. Further, Curtis argues that this section gives him a non-negotiable state right to such overtime pay for his 12 off-duty hours, independent of any interpretation of the CBA.

Curtis's argument fails, however, in light of section 510(a)(2), which provides that the "requirements of this section do not apply to the payment of overtime compensation to an employee working pursuant to . . . [a]n alternative workweek schedule adopted pursuant to a collective bargaining agreement pursuant to Section 514." Section 514 in turn states that "Sections 510 and 511 do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all

---

of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee. Nothing in this section requires an employer to combine more than one rate of overtime compensation in order to calculate the amount to be paid to an employee for any hour of overtime work. The requirements of this section do not apply to the payment of overtime compensation to an employee working pursuant to any of the following: . . . (2) An alternative workweek schedule adopted pursuant to a collective bargaining agreement pursuant to Section 514.

overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." Cal. Lab. Code § 514. By its terms, therefore, the default definition of overtime and overtime rates in section 510 does not apply to an employee who is subject to a qualifying CBA. If Curtis's CBAs in this case meet the requirements of section 514, Curtis's right to overtime "exists solely as a result of the CBA," and therefore is preempted under § 301. *Kobold*, 832 F.3d at 1032.

Curtis does not dispute that both CBAs expressly provide for "the wages, hours of work, and working conditions of the employees, and . . . premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage," as required by section 514. *See* Cal. Lab. Code § 514. Rather, he argues that the CBAs do not meet the requirements of section 514 because the CBAs's definition of overtime (and overtime rates) is not the same as section 510's definition of overtime (and overtime rates). Put differently, Curtis argues that to qualify for the exemption from section 510's definition of overtime, a CBA must provide employees with overtime that is equivalent to section 510's definition of overtime.

This interpretation of section 510 fails as a matter of statutory interpretation, and as construed by state courts. Obviously, if every employer had to meet all the requirements of section 510(a), it would render the collective bargaining exception in sections 510(a)(2) and 514 superfluous. The California Supreme Court has long made clear that "interpretations which render any part of a statute superfluous are to be avoided." *Wells v. One2One Learning Found.*, 39 Cal. 4th 1164, 1207 (2006), as modified (Oct. 25, 2006).

Moreover, California courts have rejected this interpretation of section 510. *See Vranish v. Exxon Mobil Corp.*, 223 Cal. App. 4th 103, 107 (2014). In *Vranish*, union-represented workers claimed that their employer violated section 510 by failing to pay premium wages for all "overtime hours worked." *Id.* at 106. While it was "undisputed that plaintiffs were compensated for all overtime worked in accordance with the CBA," the CBA's definition of "overtime" was less generous than section 510's definition. *Id.* Specifically, the CBA provided "that overtime is not paid for hours worked between eight and 12 in a workday," while section 510 required that overtime wages be paid for any work in excess of eight hours in one workday. *Id.* at 107, 109. The parties disputed whether the employer was "required to pay plaintiffs 'overtime,' as that word is defined in section 510, subdivision (a), or was it only required to pay a premium for overtime worked as that word is defined in the CBA." *Id.* at 109. The court concluded that "pursuant to the plain statutory language, . . . legislative history and opinions and comments from the [California Division of Labor Standards Enforcement]" an employer is required to pay only for overtime as defined by a qualifying CBA. *Id.* at 113. Thus, if a CBA satisfies the requirements of section 514, the requirements of section 510(a) "do not apply." Cal. Lab. Code §§ 510(a), 514.

Further, *Vranish* noted that this "interpretation makes sense." 223 Cal. App. 4th at 111. While section 510 establishes a default definition of overtime applicable to non-unionized employees, unionized employees "have sought and received alternative wage protections through the collective bargaining process." *Id.* (quoting *Firestone v. S. Cal. Gas Co.*, 219 F.3d 1063, 1067 (9th Cir. 2000)). Thus, the California legislature deemed it appropriate to allow

unionized employees to contract around section 510(a)'s requirements by "bargain[ing] over not only the *rate* of overtime pay, but also *when* overtime pay will begin." *Id.* (internal quotation marks and citation omitted). Accordingly, when such a bargain has been struck, courts look to the CBA to determine the definition of "overtime." *See Flowers v. L.A. Cty. Metro. Transp. Auth.*, 243 Cal. App. 4th 66, 85 (2015) (holding that the exemption for collective bargaining agreements in section 514 allows parties to "contractually agree, through the collective bargaining process, to exclude the specified tasks from the definition of 'overtime hours worked'").

Curtis argues that we should adhere to our analysis in *Gregory v. SCIE, LLC*, 317 F.3d 1050, 1053 (9th Cir. 2003), which was issued before *Vranish* was decided. *Gregory* assumed that the collective bargaining agreement at issue met the requirements of section 514 and provided "premium wage rates" for overtime hours worked, as "overtime hours" were defined in the CBA. *Id.* But without the benefit of any California cases, *Gregory* held that section 510, rather than a CBA, defined which hours constituted "overtime hours." *Id.* at 1053 n.4. Under this interpretation, we held it was necessary to interpret state law in order to resolve the parties' dispute, and therefore the employee's claim was not preempted. *Id.* at 1054.

Curtis's argument fails, however, because we are bound to follow the rulings of intermediate state courts "absent convincing evidence that the California Supreme Court would reject th[ose] interpretation[s]." *In re Watts*, 298 F.3d 1077, 1082–83 (9th Cir. 2002) (collecting cases); *see also Muniz v. United Parcel Serv., Inc.*, 738 F.3d 214, 219 (9th Cir. 2013). Because *Vranish* and *Flowers* provided a reasonable statutory

interpretation that avoided rendering sections 510(a)(2) and 514 superfluous, and was consistent with legislative history, *see Vranish*, 223 Cal. App. 4th at 109–10, we see no reason that the California Supreme Court would reject it. Accordingly, we conclude that *Gregory* was overruled by intervening California case law.

Under the reasoning of *Vranish* and *Flowers*, Curtis's CBAs in this case meet the requirements of section 514, and therefore Curtis's claim for overtime pay is controlled by his CBAs. Because Curtis's right to overtime "exists solely as a result of the CBA," *Kobold*, 832 F.3d at 1032, his claim that Irwin violated overtime requirements by not paying him for the 12 off-duty hours is preempted under § 301. Thus, his claim fails at step one of the preemption analysis.[6]

IV

We now turn to Curtis's remaining claims. Curtis argues that Irwin improperly denied him rest and meal periods during the 12 hours he was off duty, in violation of sections 226.7 and 512(a) of the California Labor Code. He also claims that Irwin violated sections 1194 and 1197 of the California Labor Code, which establish a right to receive the "legal minimum wage" during this 12-hour off-duty period.

Irwin, in turn, argues that Curtis's rights to rest and meal periods and to a minimum wage substantially depend on an analysis of the CBAs, and therefore are preempted under

---

[6] Because we hold that Curtis's state law overtime claim is preempted by § 301, we need not address whether Curtis "clearly and unmistakably" consented to the arbitration of his state law claims pursuant to *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 251 (2009).

§ 301.  According to Irwin, California's Industrial Welfare Commission has issued an order that exempts an employer from providing the statutory meal and rest breaks where a qualifying CBA is in place.  *See* Wage Order 16-2001, Cal. Code Regs. tit. 8, § 11160(11).  Further, Irwin argues that resolving Curtis's minimum wage claims requires an analysis of the CBAs to determine the degree of Irwin's control over Curtis's off-duty activities, which *Mendiola* deemed to be the central inquiry for overtime claims.

In addition to these preemption issues, there remains a dispute as to whether Curtis's meal and rest period, final pay, and pay stub claims are preempted by OCSLA.  Under OCSLA, federal law generally governs claims relating to the Outer Continental Shelf, but the civil and criminal laws of each adjacent state are deemed to be applicable federal law to the extent they are "applicable and not inconsistent" with federal law.  43 U.S.C. § 1333(a)(2)(A).  In *Newton v. Parker Drilling Management Services, Ltd.*, we held that claims brought pursuant to California's minimum wage and overtime laws are applicable and not inconsistent with the Fair Labor Standards Act, and therefore applied on the Outer Continental Shelf.  881 F.3d 1078, 1084 (9th Cir. 2018), *cert granted*, ___ S. Ct. ___, 2019 WL 166875 (U.S. Jan. 11, 2019).  But *Newton* did not resolve whether California's meal period, final pay, and pay stub laws are "applicable" and "not inconsistent with existing federal law," instead remanding those claims to the district court.  *Id.* at 1099.  Nor did *Newton* address whether the LMRA (or the National Labor Relations Act) is consistent with California labor law.

The district court did not consider any of these issues, focusing instead on Curtis's argument that the CBAs did not apply to his activities on the Outer Continental Shelf.

Although Curtis conceded the applicability of the CBAs in his motion to reconsider reply brief, the district court did not consider Curtis's claims in light of this concession.[7] Moreover, these claims raise complex issues of state law that have not been fully briefed by the parties.[8] Because the district court is better able to decide these questions in the first instance, *see Ariz. Libertarian Party, Inc. v. Bayless*, 351 F.3d 1277, 1283 (9th Cir. 2003), we remand to the district court to review Curtis's meal and rest period and minimum wage claims, as well as the four derivative claims.[9]

**AFFIRMED IN PART AND REMANDED IN PART**.

---

[7] Because Curtis first conceded that the CBAs apply to him in his motion for reconsideration reply brief, Irwin argues that Curtis is precluded from arguing that his claims are not preempted by § 301 even though the CBAs apply. But Curtis vigorously argued that his claims were not preempted by § 301 before the district court. Because "it is claims that are deemed waived or forfeited, not arguments," we reject Irwin's contentions that Curtis waived this argument. *United States v. Pallares-Galan*, 359 F.3d 1088, 1095 (9th Cir. 2004).

[8] The parties have not addressed, for example, whether Curtis's claim that Irwin denied him meal periods in violation of California Labor Code section 512(a) requires an analysis of whether Curtis is "an employee specified in" section 512(f), in which case Curtis may be subject to the CBA exemption in section 512(e). Nor did the parties discuss whether the CBA exemption applies to Curtis due to Wage Order 16-2001, Cal. Code Regs. tit. 8, § 11160(11), and whether the Wage Order could be "harmonize[d]" with section 512. *See Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1027 (2012). In addition, as explained above, Curtis argues that *Mendiola*, 60 Cal. 4th 833, provides the legal basis for his minimum wage claim, but the parties failed to fully address whether applying *Mendiola* here requires an analysis of the CBA.

[9] The parties shall bear their own costs on appeal.