**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SAMUEL LOVE,
*Plaintiff-Appellant*,

v.

MARRIOTT HOTEL SERVICES, INC., a
Delaware Corporation,
*Defendant-Appellee.*

No. 21-15458

D.C. No.
3:20-cv-07137-
TSH

OPINION

Appeal from the United States District Court
for the Northern District of California
Thomas S. Hixson, Magistrate Judge, Presiding

Argued and Submitted February 14, 2022
San Francisco, California

Filed July 22, 2022

Before: M. Margaret McKeown and William A. Fletcher,
Circuit Judges, and Kathryn H. Vratil,[*] District Judge.

Opinion by Judge McKeown

---

[*] The Honorable Kathryn H. Vratil, United States District Judge for the District of Kansas, sitting by designation.

**SUMMARY**[**]

---

**Americans with Disabilities Act**

The panel affirmed the district court's dismissal, for failure to state a claim, of an action under Title III of the Americans with Disabilities Act, alleging that a hotel's reservation website failed to comply with the "Reservations Rule," 28 C.F.R. § 35.302(e)(1), which regulates the accessibility information that hotels must post on their online booking sites.

Addressing "*Auer* deference" to an agency's construction of its own regulation, the panel concluded that the Reservations Rule was ambiguous in its directive that hotels "[i]dentify and describe accessible features" in "enough detail to reasonably permit individuals with disabilities to assess independently" whether the hotel's offerings suit their needs. To resolve that ambiguity, the panel deferred to the Department of Justice's sound and reasonable interpretation of that rule (the "DOJ Guidance"), published in an appendix to the Code of Federal Regulations. The panel concluded that the defendant's website satisfied the DOJ Guidance and thus the Reservations Rule, which contains different requirements depending on the age of a building. The panel concluded that this distinction did not matter here because defendant's website passed muster under either set of requirements.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Dennis Price (argued) and Russell Handy, Center for Disability Access, San Diego, California, for Plaintiff-Appellant.

Philip H. Stillman (argued), Stillman & Associates, Miami Beach, Florida, for Defendant-Appellee.

Minh N. Vu (argued), Seyfarth Shaw LLP, Washington, D.C.; Michael E. Steinberg, Boston, Massachusetts; for Amicus Curiae American Hotel & Lodging Association.

**OPINION**

McKEOWN, Circuit Judge:

The Americans with Disabilities Act ("ADA") bars discrimination in public life against people with disabilities. *See* 42 U.S.C. § 12101 *et seq*. Congress has delegated to the Department of Justice ("DOJ") the responsibility of promulgating regulations under the ADA. *Id.* § 12186(b). The regulation at issue in this appeal is the "Reservations Rule," which regulates the accessibility information that hotels must post on their online booking websites. 28 C.F.R. § 36.302(e)(1). The Reservations Rule is ambiguous in its directive that hotels "[i]dentify and describe accessible features" in "enough detail to reasonably permit individuals with disabilities to assess independently" whether the hotel's offerings suit their needs. *Id.* § 36.302(e)(1)(ii). To resolve that ambiguity, we defer to the DOJ's sound and reasoned interpretation of that rule (the "DOJ Guidance"), which DOJ published in an appendix to the Code of Federal Regulations. 28 C.F.R. pt. 35, app. A. We conclude that Marriott's

website satisfies the DOJ Guidance and thus the Reservations Rule.

## I. BACKGROUND

Samuel Love has paraplegia and uses a wheelchair for mobility. His condition makes it difficult or impossible for Love to stand, walk, reach objects above his shoulders, transfer from his wheelchair to other equipment, and maneuver around fixed objects. Preparing to travel to San Francisco in February 2021, Love tried to book a room at the downtown Marriott Marquis using the hotel's online reservation website. According to Love, the website lacked sufficient information about the hotel's accessibility features, which prompted him to sue Marriott Hotel Services Inc. ("Marriott") under the ADA. Love takes issue with the website's description of "Accessible Hotel Features," and its list of accessible features in some guestrooms. In addition to that list, the website provided information for different types of rooms, including the size and number of beds, the type of accessible bathing facility, and the accessible communications features available in the room. The website listed a phone number for prospective guests to call with inquiries about "the physical features of [the hotel's] accessible rooms, common areas, or special services relating to a specific disability."

Love contends that this information was insufficient to permit him to assess whether a given hotel room would meet his accessibility needs. Because Love uses a wheelchair, he alleges he needed to know whether there was at least 30 inches of maneuvering space beside the bed, whether the sink and mirror had enough clearance to be used from a wheelchair, whether there were grab bars mounted near the toilet and shower, whether the shower had a seat and

detachable hand-held wand, and whether the heights of the toilet and bathing facilities were appropriate.

Love claims that Marriott's failure to post this information on the reservation website violated the ADA and its implementing regulations. The district court granted Marriott's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), finding that the website complied with the DOJ Guidance and satisfied the Reservations Rule.

## II. ANALYSIS

In our de novo review of the district court's dismissal under Rule 12(b)(6), we accept as true all factual allegations in the complaint, construing the pleadings in the light most favorable to Love, the nonmoving party. *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1151 (9th Cir. 2019).

### A. REGULATORY FRAMEWORK

Title III of the ADA requires public accommodations, including hotels, to afford disabled individuals "the opportunity . . . to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(b)(1)(A)(i). Subject to several enumerated exceptions, those facilities must make "reasonable modifications" to their "policies, practices, or procedures" to accommodate individuals with disabilities. *Id.* § 12182(b)(2)(A)(ii).

The ADA delegates rulemaking authority to DOJ, which must "issue regulations . . . to carry out the provisions of" Title III relating to hotel accommodations. *Id.* § 12186(b). In 2004, DOJ issued an advance notice of proposed rulemaking "to begin the process" of adopting "revised

guidelines" implementing the statute's requirements. Advance Notice of Proposed Rulemaking Relating to Nondiscrimination on the Basis of Disability by Public Accommodations, 69 Fed. Reg. 58768, 58768 (Sept. 30, 2004). The "public response" was "extraordinary" and highlighted the need for regulatory guidance to ensure that individuals with disabilities could "reserve hotel rooms with the same efficiency, immediacy, and convenience as those who do not need accessible guest rooms." Notice of Proposed Rulemaking Relating to Nondiscrimination on the Basis of Disability by Public Accommodations, 73 Fed. Reg. 34508, 34511, 34525 (June 17, 2008). In response, DOJ proposed specific language to address hotel reservation websites and solicited public feedback. *See id.* at 34553–54.

From this extended process of notice-and-comment rulemaking emerged the final Reservations Rule. Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities Final Rule, 75 Fed. Reg. 56236, 56251–52 (Sept. 15, 2010) (codified at 28 C.F.R. § 36.302(e)(1). The Reservations Rule requires places of public accommodations, like the San Francisco Marriott Marquis here, to "ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms." 28 C.F.R. § 36.302(e)(1)(i). Regulated entities must also "[i]dentify and describe accessible features in the hotels and guest rooms" on the hotel's website, providing "enough detail to reasonably permit" guests to "assess independently whether a given hotel or guest room meets his or her accessibility needs." *Id.* § 36.302(e)(1)(ii).

Concurrent with the final Reservations Rule, DOJ published an appendix with interpretive guidance. *See*

28 C.F.R. pt. 36, app. A.   The DOJ Guidance contains a "detailed description" of the regulatory amendments, and the "reasoning behind those changes." *Id.*   It also provides information about how hotels may comply with the regulations.  For example, older hotels built before the ADA Standards came into effect should specify "features that do not comply with the 1991 Standards," like a bedroom doorway that does not meet current regulations.   *Id.* Different standards apply to newer hotels built in compliance with the 1991 Standards for Accessible Design, *see id.* app. D.  For these hotels, "it may be sufficient to specify that the hotel is accessible and, for each accessible room, to describe the general type of room (e.g., deluxe executive suite), the size and number of beds (e.g., two queen beds), the type of accessible bathing facility (e.g., roll-in shower), and communications features available in the room (e.g., alarms and visual notification devices)." *Id.* app. A.  In each case, hotels should make trained staff available to answer questions about accessibility features and provide guests more detailed information.  *Id.*

## B.  WE AFFORD THE DOJ GUIDANCE CONTROLLING WEIGHT

The parties dispute how much deference we should afford the DOJ's interpretation of the Reservations Rule in the DOJ Guidance.  Under the familiar principle of "*Auer* deference," we defer to an agency's construction of its own regulation.  *Kisor v. Wilkie*, 139 S. Ct. 2400, 2412 (2019) (explaining the "presumption that Congress would generally want the agency to play the primary role in resolving regulatory ambiguities.").  But *Auer* deference is warranted "only if a regulation is genuinely ambiguous," and only after we make "an independent inquiry into whether the character

and context of the agency interpretation entitles it to controlling weight." *Id.* at 2414, 2416.

Applying the "'traditional tools' of construction," considering the regulation's "text, structure, history, and purpose," we conclude that the Reservations Rule is genuinely ambiguous. *Id.* at 2415 (first quoting *Chevron U. S. A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.9 (1984)). The Rule requires hotel reservation websites to "[i]dentify and describe accessible features . . . in enough detail to reasonably permit" customers "to assess independently whether a given hotel or guest room meets his or her accessibility needs." 28 C.F.R. § 36.302(e)(1)(ii). But what is "enough detail," and which "accessible features" must be identified and described? These are genuine ambiguities in the regulation's text. Its structure, history and purpose do not dispel that textual ambiguity.

## 1. The Rule's Structure, History and Purpose

The Rule's structure and its placement within Part 36 of the Code of Federal Regulations' chapter dedicated to the requirements for public accommodations' nondiscrimination of people with disabilities does not resolve the text's ambiguity, nor do its history and purpose. During the regulatory process, commenters asked DOJ "to focus on previously unregulated areas, such as . . . reservations for hotel rooms." 75 Fed. Reg. 56236, 56239. In 2008, commenters observed that "now, more than seventeen years after enactment of the ADA, as facilities are becoming physically accessible to individuals with disabilities, the Department needs to focus on second generation issues that ensure that individuals with disabilities can actually gain access to and use the accessible elements," such as reservations for hotel rooms. *Id.* While the history makes clear that the Rule's purpose was to

address concerns that it was often "difficult or impossible to obtain information about accessible rooms and hotel features" from a reservation system, it does not clarify what level of detail is sufficient or which accessibility features must be described.  75 Fed. Reg. 56236, 56273.

### 2.  Additional Considerations

Having concluded that the Rule's text, structure, history, and purpose each point to the Reservation Rule's ambiguity, we ask whether the "character and context of the agency interpretation" suggest such deference is appropriate.  *Kisor*, 139 S. Ct. at 2416.  The DOJ Guidance was promulgated pursuant to DOJ's "substantive expertise" in ADA compliance, making DOJ an "authority" on the Rule's meaning.  *Kisor*, 139 S. Ct. at 2417; *cf. Miller v. California Speedway Corp.*, 536 F.3d 1020, 1025–26 (9th Cir. 2008) (describing DOJ's technical expertise on related ADA provision); *see also Fortyune v. City of Lomita*, 766 F.3d 1098, 1104 (9th Cir. 2014) (concluding the court was "bound to defer" to DOJ's interpretation of ADA implementing regulations).  The Guidance was published in the Federal Register alongside the Rule and was informed by the extensive notice-and-comment period that preceded publication.  75 Fed. Reg. 56236, 56240.  It reflected the "agency's authoritative [and] official position," and was the product of DOJ's "fair and considered judgment."  *Kisor*, 139 S. Ct. at 2416.  We therefore afford "controlling weight" to the DOJ Guidance and ask whether the San Francisco Marriott Marquis' reservations website complies with that Guidance.  *Id.*

## C. THE RESERVATIONS WEBSITE COMPLIES WITH THE DOJ GUIDANCE

Although the Rule contains different requirements depending on the age of a building,[1] that distinction does not matter here, because the Marriott's website passes muster under either set of requirements.

Newer hotels built in compliance with ADA Standards should "specify that the hotel is accessible" and provide key information about accessible rooms per the DOJ Guidance. 28 C.F.R. pt. 36, app. A. This information should include "the general type of room (e.g., deluxe executive suite), the size and number of beds (e.g., two queen beds), the type of accessible bathing facility (e.g., roll-in shower), and communications features available in the room (e.g., alarms and visual notification devices)." *Id.*

Marriott's website complies with this guidance. First, it "specif[ies] that the hotel is accessible," *id.*, and lists accessible features available in certain guest rooms, including 32-inch wide doorways; accessible routes from the public entrance to accessible guest rooms; alarm clock telephone ringers; bathroom and bathtub grab bars; bathtub seats; lowered deadbolt locks; door night guards, electrical outlets, and viewports; doors with lever handles; flashing

---

[1] Public accommodations that were constructed or altered after January 26, 1993 must comply with either the 1991 or 2010 ADA Standards for Accessible Design, depending on the date the construction or alterations began. 28 C.F.R. § 36.406. Facilities that were constructed prior to January 1993 and have not been altered are not required to comply with the 1991 or 2010 Standards but must still "remove architectural barriers . . . where such removal is readily achievable." *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (en banc) (quoting 42 U.S.C. § 12182(b)(2)(A)(iv)).

door knockers; hearing accessible rooms and/or kits; roll-in showers; adjustable shower wands; text telephones; close-captioning television service; wheelchair-height toilet seats; transfer showers; and accessible vanities. The website also describes the accessible guest rooms themselves, displaying information about (1) "the general type of room"; (2) "the size and number of beds"; (3) "the type of accessible bathing facility"; and (4) "communications features available in the room" in accordance with the DOJ Guidance. *Id.* For example, the page describing the Hotel's "Guest room, 2 Queen, Low floor" room type stated that such rooms offered "2 Queen" beds, "roll in showers" and hearing-accessible communications features including "visual alarms and visual notification devices for door and phone."

Love correctly observes that certain features may be described as "accessible" but differ in key ways. The DOJ Guidance provides the example of an "accessible" bathroom, which could contain either a roll-in shower or a bathtub. *Id.* ("[H]otel rooms that are in full compliance with current standards may differ"). In such cases, hotels must explain the accessible features so that individuals with disabilities can evaluate whether those features meet their needs. *Id.* Marriott also complied with this requirement. For example, Marriott's website stated that one accessible guestroom offered a "roll-in shower" (as opposed to a transfer shower or tub) in compliance with the Guidance. For other features, the ADA Standards leave no doubt about the meaning of "accessible." For those features, additional detail is not necessary because "accessible" functions as a term of art, i.e., as a shorthand way of signaling compliance with the ADA and its implementing regulations. For example, the 1991 Standards specify that "accessible sleeping rooms shall have a 36 in. [] clear width maneuvering space located along both sides of a bed," 28 C.F.R. pt. 36 app. D § 9.2.2(1); that

toilet seats must be 17–19  inches high with grab bars provided, *id.* §§ 4.16.3, 4.16.4; that sinks must have knee clearance that is at least 27 inches high, 30 inches wide, and 19 inches deep, *id.* § 4.24.3; and accessible showers must have seats and grab bars, *id.* §§ 4.21.3, 4.21.4—the same information Love contends was missing from Marriott's website.

"Older hotels" not built in accordance with ADA Standards "should include, at a minimum, information about accessible entrances to the hotel, the path of travel to guest check-in and other essential services, and the accessible route to the accessible room or rooms." *Id.* app. A. Marriott's website provides that information and more:  The "Hotel Details" page includes an "Accessibility" section describing the "Accessible Areas with Accessible Routes from Public Entrance."  Those areas include the business center, the fitness center, the public entrance alternative, the registration desk pathway, the registration desk, and the restaurant lounges.  The page also describes "Accessible Hotel Features" including parking areas and elevators.

These older hotels should also indicate when "important features . . . do not comply with the [ADA] Standards" and "provide a way for guests to contact the appropriate hotel employee for additional information." *Id.*  Love has neither alleged that the Hotel fails to comply with the ADA Standards, nor has he indicated that any information is missing from the website regarding noncompliant features. In any event, Marriott's website provides a phone number for prospective guests to call with inquiries about "the physical features of [Marriott's] accessible rooms, common areas, or special services relating to a specific disability." *Id.* (requiring hotels to make "trained staff" available to provide additional accessibility information).

To sum up, Marriott's website comports with DOJ's Guidance.

## III.    CONCLUSION

Because we afford the DOJ Guidance controlling weight in interpreting the Reservations Rule, and because Marriott has complied with that Guidance, Love cannot prevail on his ADA claim.  We affirm the district court's dismissal of the complaint.