NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JAN 18 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

RENO DEALERSHIP GROUP, LLC, a
limited liability company,

Plaintiff-Appellant,

v.

GENERAL MOTORS, LLC, a Delaware
limited liability company; ROBERT
COFFEY, an individual,

Defendants-Appellees.

No. 21-55609

D.C. No. 2:21-cv-00696-MCS-PD

MEMORANDUM*

Appeal from the United States District Court
for the Central District of California
Mark C. Scarsi, District Judge, Presiding

Argued and Submitted May 17, 2022
Pasadena, California

Before:  MILLER and COLLINS, Circuit Judges, and KORMAN,** District Judge.

Plaintiff Reno Dealership Group, LLC ("RDG") timely appeals from the

district court's dismissal with prejudice of RDG's operative complaint against

Defendants General Motors LLC ("GM") and Robert Coffey, who is alleged to be

---

* This disposition is not appropriate for publication and is not precedent except as
provided by Ninth Circuit Rule 36-3.

** The Honorable Edward R. Korman, United States District Judge for the Eastern
District of New York, sitting by designation.

the "Western Regional Director" for GM. The district court had subject matter jurisdiction under 28 U.S.C. § 1332(a), and we have appellate jurisdiction under 28 U.S.C. § 1291. We review de novo the district court's dismissal of the complaint for failure to state a claim upon which relief may be granted. *See Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1151 (9th Cir. 2019). "We review the denial of leave to amend for an abuse of discretion, but we review the question of futility of amendment de novo." *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1197 (9th Cir. 2021) (citation omitted). We affirm.

## I

The district court correctly held that the operative complaint failed to state a claim against GM for breach of the Dealer Sales & Services Agreement ("Agreement") between RDG and GM.

## A

RDG contends that the Agreement imposed obligations on GM to regulate or supervise false advertising or unfair competition by *other* GM dealerships. Under Michigan law—which applies to the construction of the Agreement—the asserted existence of such a contractual obligation raises a question of law. *Innovation Ventures v. Liquid Mfg.*, 885 N.W.2d 861, 870 (Mich. 2016). "Absent an ambiguity or internal inconsistency, contractual interpretation begins and ends with the actual words of a written agreement." *Id*. (citation omitted). "If the contractual

2

language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." *Phillips v. Homer* (*In re Egbert R. Smith Trust*), 745 N.W.2d 754, 758 (Mich. 2008). Construed in accordance with its plain language, the Agreement does not impose the obligations RDG asserts.

The operative complaint invokes §§ 5.1.1, 5.1.5, and 5.1.6 of the Agreement, but these provisions do not support RDG's theory. By its terms, § 5.1.1 primarily sets forth various obligations of "*Dealer*" (*i.e.*, RDG) with respect to the promotion, sales, and service of GM products, including the obligation to "comply with the retail sales standards established by [GM]." The only obligation that § 5.1.1 imposes on GM is the duty to "consult with the appropriate dealer council and the national dealer council before amending the retail sales standards." Section 5.1.5 requires GM to "conduct general advertising programs to promote the sale of Products for the mutual benefit of [GM] and Dealers," to "make available to Dealer advertising and sales promotion materials," and to "advise Dealer of any requirements or applicable charges." Section 5.1.6 requires Dealer "to advertise and conduct promotional activities that are lawful" and states that "Dealer will not advertise or conduct promotional activities in a misleading or unethical manner" or in a way "harmful to the reputation of Dealer, [GM], or its Products." RDG does not contend that any of these specific obligations that are

3

imposed on GM was breached. And nothing in the language describing GM's specific duties concerning general advertising programs, promotional materials, and program requirements imposes on GM a contractual obligation to RDG to supervise or regulate the conduct of *other* dealers.

RDG nonetheless argues that, because GM's comparable contracts with other dealers presumably require those dealers to likewise refrain from misleading and unethical advertising, GM must be understood to have a contractual obligation *owed to RDG* to enforce those prohibitions on such advertising. This contention fails. Even granting RDG's assumption about what the other dealers' contracts say, the result is simply a series of contracts in which each dealer has obligations to GM, and GM in turn has particular obligations to each respective dealer. RDG still cannot point to any contractual language that even arguably says that GM has made any promises *to RDG* about how GM will enforce its rights, under other dealers' contracts, with respect to those other dealers' advertising. Although RDG cites the preamble to the Agreement, its general statements about the purposes and objectives of the Agreement do not create obligations that otherwise lack any basis in the operative language of the Agreement.

Nor can RDG argue that it is a third-party beneficiary of the other dealers' contractual obligations towards GM with respect to their advertising and promotion. Under Michigan law, a third-party beneficiary must be "directly

4

referred to in the contract, before the third party is able to enforce the contract."

*Schmalfeldt v. North Pointe Ins.*, 670 N.W.2d 651, 654 (Mich. 2003) (citing Mich. Comp. Laws § 600.1405). RDG has not alleged that it is directly referred to in Defendant GM's contracts with other dealers. On the contrary, the operative complaint alleges that RDG's Agreement "is the same agreement [GM] enters into with all of its authorized dealers," and the text of that Agreement unambiguously states that it is "not enforceable by any third parties and is not intended to convey any rights or benefits to anyone who is not a party to this Agreement."

**B**

RDG also alleges that GM breached the Agreement by "failing to deliver new motor vehicles to [RDG] in a fair and equitable manner." Specifically, RDG alleges that GM failed to make new vehicles available in a timely manner and that when vehicles arrived, they were often "damaged" or "in poor condition."

In contending that GM had an obligation to timely supply new vehicles, RDG relies primarily on §§ 6.1 and 6.4.1 of the Agreement. Section 6.1 states that GM "will endeavor to distribute new Motor Vehicles among its dealers in a fair and equitable manner." However, that provision contains express cautionary language noting that "[m]any factors affect the availability and distribution of Motor Vehicles to dealers, including . . . weather and transportation conditions, governmental regulations, and other conditions beyond the control of General

5

Motors." Section 6.1 further states that "GM reserves to itself discretion in accepting orders and distributing Motor Vehicles, *and its judgments and decisions are final*" (emphasis added). Section 6.4.1 provides that GM will "make available" a "mix of models and series of Motor Vehicles," but this obligation is expressly "subject to Article 6.1." At most, the operative complaint alleges that GM ineptly managed the flow of new vehicles through ports of entry, resulting in substantial delays that imposed significant hardships on RDG and other dealers. These allegations fail to establish that GM did not "endeavor" to distribute vehicles fairly and equitably, especially given GM's reservation of final "discretion" in distributing vehicles.

RDG also relies on § 5.3, which states that GM will provide "reasonable support to assist Dealer's attainment of customer satisfaction." But the highly general obligation to provide "reasonable support" to assist in attaining customer satisfaction does not override the Agreement's specific provisions concerning delivery of vehicles by GM. *See*, *e.g.*, *DeFrain v. State Farm Mut. Auto. Ins.*, 817 N.W.2d 504, 509 n.22 (Mich. 2012).

RDG's further theory that the mere delivery of a vehicle with damage constitutes a breach of the Agreement finds no support in the contractual language. On the contrary, § 7.1 of the Agreement expressly contemplates that transportation vehicle damage and other vehicle quality issues will inevitably arise, and it

6

contains a specific provision requiring GM to cover the costs of "transportation damage repairs" and other specified issues identified in dealer inspections. The operative complaint contains no allegations that GM refused to cover appropriate repairs. To the extent that GM delivered damaged vehicles that it paid to repair, that does not constitute a breach of the Agreement.

## II

The district court correctly held that the operative complaint fails to state a claim of negligence against GM or Coffey.

To state a claim of negligence under Michigan law, a plaintiff must demonstrate, *inter alia*, that "the defendant owed the plaintiff a legal duty." *Loweke v. Ann Arbor Ceiling & Partition Co.*, 809 N.W.2d 553, 556 (Mich. 2011).[1] RDG cites no authority that would support recognizing a novel duty owed by a manufacturer to its dealers to supervise the promotional activities of its other dealers. Moreover, Michigan law generally declines to recognize a tort-based duty

---

[1] The parties' principal briefs do not expressly address the question of which State's law applies to RDG's negligence claim. RDG appears to assume that the negligence claim is governed by Michigan law, because it cites almost exclusively Michigan caselaw. GM, without objection, construes RDG's brief as resting upon Michigan law. Accordingly, we will assume without deciding that RDG's opening brief is correct that Michigan law governs its negligence claim. To the extent that RDG's reply brief could be construed to suggest that Nevada tort law governs the elements of RDG's negligence claim, we deem any such argument to be forfeited. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) (holding that "arguments not raised by a party in its opening brief are deemed waived").

among contracting parties to exercise reasonable care to avoid "'intangible economic losses,'" and RDG did not cite below any basis for finding "an independent legal duty distinct from the duties arising out of the contractual relationship." *Rinaldo's Constr. Corp. v. Mich. Bell Tele. Co.*, 559 N.W.2d 647, 658 (Mich. 1997) (citation omitted). For the first time on appeal, RDG contends that Nevada Administrative Code § 482.120's prohibition on "indirectly" "caus[ing]" the misleading advertising of vehicles supports recognition of a manufacturer's tort duty to one dealer to stop another dealer's misleading advertising. Even assuming that this argument has not been forfeited by RDG's failure to raise it below, a prohibition against *causing* misleading advertising does not, without more, give rise to an affirmative negligence-based duty to intervene to stop a dealer's misleading advertising, much less to do so to prevent economic losses to that dealer's competitors.

RDG likewise fails to support its contention that GM had a tort-based duty towards its dealers to exercise reasonable care to avoid economic losses associated with the delivery of vehicles. RDG points to no precedent that would support recognition of such a duty by a manufacturer, and it did not cite below any basis for such a duty that would be distinct from the manufacturer's contractual obligations. For the first time on appeal, RDG points to statutory duties imposed by Nevada and Michigan law on vehicle manufacturers with respect to the delivery

8

or distribution of vehicles. *See* MICH. COMP. LAWS § 445.1574(a); NEV. REV. STAT. § 482.36388. Even assuming that this argument has not been forfeited, it provides no basis for reversal here. Although a statutory violation may establish that a duty of care that is owed has been violated, it does not, without more, establish that such a tort duty is owed to a particular plaintiff in the first place. *See Sabbagh v. Hamilton Psych. Servs., PLC*, 941 N.W.2d 685, 701–02 (Mich. App. 2019). Although the cited statutes create certain obligations respecting the delivery of vehicles, we have not been cited any authority that would support the view that these statutory obligations give rise to a *tort duty* on the part of a manufacturer to avoid economic harms to dealers in connection with such delivery.

### III

Beyond its reliance on the newly cited statutes and regulations discussed above, RDG has not provided any other basis for concluding that the district court erred in denying leave to amend. Accordingly, RDG's operative complaint was properly dismissed with prejudice for failure to state a claim.[2]

**AFFIRMED.**

---

[2] We therefore do not address whether the district court erred in relying on the alternative ground that, by filing its opposition to Defendants' motion to dismiss over a week late, RDG should be deemed, under the district court's local rules, as having consented to the granting of that motion.