**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

DEC 15 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

CROSSFIRST BANK, a Kansas banking corporation; CROSSFIRST INVESTMENTS INCORPORATED, a Kansas corporation; MINNESOTA LAWYERS MUTUAL INSURANCE COMPANY, a Minnesota corporation; ALPS PROPERTY & CASUALTY INSURANCE COMPANY, a Montana corporation,

        Plaintiffs - Appellants,

and

NANCY HANNA, FRANK HANNA Sr., WESLEY HANNA TRUST, trustee of Frank Hanna , Sr. trustee of Henry H Hanna, III trustee of Wesley Hanna, LEIGH HANNA TRUST, trustee of Frank Hanna , Sr. trustee of Henry H Hanna, III trustee of Leigh Hanna, FRANK HANNA JR TRUST, trustee of Frank Hanna , Sr. trustee of Henry H Hanna, III trustee of Frank Hanna, Jr.,

        Plaintiffs,

  v.

No. 24-7605

D.C. No. 2:18-cv-01637-DLR

MEMORANDUM[*]

---

    [*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

VIESTE SPE, LLC, an Arizona limited liability company; VIESTE ENERGY, LLC, an Indiana limited liability company; VIESTE, LLC, an Indiana limited liability company; MARK BRANAMAN, Manager and agent of Vieste Energy, Vieste SPE, and Vieste; MICHAEL A. COMPARATO Sr., Manager and agent of Vieste Energy, Vieste SPE, and Vieste; JOSEPH COOK, previously named as Joseph A Cook, manager and agent of Vieste SPE; DONALD W. CURRISE, Manager and agent of Vieste SPE and Vieste and President and CEO of Vieste; JOSHUA D. ROGERS, Manager and agent of Vieste SPE; HERBERT J SIMS & CO., INC., a Connecticut corporation; TIMOTHY XAN SMITH, Employee and agent of HJ Sims; LAWSON FINANCIAL CORPORATION, an Arizona corporation; ROBERT LAWSON; PAMELA LAWSON, husband and wife,

Defendants - Appellees,

and

WILLIAM B. SIMS, President, Managing Principal, and CEO of HJ Sims, JANE DOE LYNCH, husband and wife, JERRY G. PETERSON, partner at Peck, Shaffer & Williams, LLP, DINSMORE & SHOHL, LLP, an Ohio limited liability partnership, PECK SHAFFER & WILLIAMS, LLP, a Georgia limited liability partnership, WESLEY HANNA, trustee of: Frank Hanna, Sr, Henry H. Hanna, III, & Wesley Hanna (Wesley Hanna trust), LEIGH HANNA, trustee of Frank Hanna, Sr., Henry H Hanna, III, & Leigh L. Hanna FBO

| Leigh Hanna trust, |
| Defendants. |

Appeal from the United States District Court
for the District of Arizona
Douglas L. Rayes, District Judge, Presiding

Argued and Submitted November 18, 2025
Phoenix, Arizona

Before: MURGUIA, Chief Judge, and HURWITZ and COLLINS, Circuit Judges.

In 2012, Defendants-Appellees Vieste[1] LLC and affiliated persons ("Vieste") engaged with the City of Glendale to construct a materials-recycling facility. The agreement provided that Glendale would deliver waste to the facility, the facility would remove recyclables from the waste, and Vieste would send the remaining waste to a landfill. Defendants-Appellees Herbert J. Sims & Co., Inc. and Lawson Financial Corporation underwrote bonds issued to fund the construction of the facility.

However, after the bonds were issued, Vieste and Glendale disputed whether Glendale could deliver yard waste—such as materials from brush, trees, shrubs, and lawns—to the facility. The facility was designed and constructed such that it

---

[1] "Vieste" as used herein refers collectively to the three Vieste entities (Vieste LLC, Vieste Energy, LLC, and Vieste SPE, LLC) and four of Vieste SPE's Board of Managers—Michael Comparato, Don Currise, Joseph Cook, and Mark Branaman.

would be cost-prohibitive to process yard waste. Due to this dispute, the facility never achieved commercial operations and the bonds defaulted.

Plaintiffs-Appellants are purchasers of the bonds. They allege that Vieste and the underwriters (collectively, "Defendants") made misrepresentations in the bond's Official Statement, a document that disclosed information about the bonds to potential purchasers. Among other allegations, Plaintiffs assert that the Official Statement misrepresented the facility's design and its ability to generate revenue required to repay the bonds.

The district court dismissed Plaintiffs' Arizona Securities Act ("ASA") claim, A.R.S. § 44-1991(A), as barred by the statute of limitations. Subsequently, the district court granted summary judgment to Defendants on the remaining common law fraud, negligent misrepresentation, and aiding and abetting fraud claims for Plaintiffs' failure to establish reliance on misrepresentations when they purchased the bonds.

On appeal, Plaintiffs challenge these two rulings. We have jurisdiction under 28 U.S.C. § 1291. We review a dismissal for failure to state a claim de novo. *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1151 (9th Cir. 2019). "We accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Id.* (internal quotations and citation omitted). We also review a summary judgment de novo. *Desire, LLC v.*

*Manna Textiles, Inc.*, 986 F.3d 1253, 1259 (9th Cir. 2021).  On review, we must determine, viewing the evidence in the light most favorable to the nonmoving party, "whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Soc. Techs. LLC v. Apple Inc.*, 4 F.4th 811, 816 (9th Cir. 2021) (citation omitted).  We affirm.

1.  The district court did not err in dismissing Plaintiffs' ASA claim as barred by the two-year statute of limitations.  *See* A.R.S. § 44-2004(B).  Under Arizona law, a cause of action accrues when "the plaintiff knows or with reasonable diligence should know the facts underlying the cause." *Satamian v. Great Divide Ins. Co.*, 545 P.3d 918, 925 (Ariz. 2024) (internal quotations and citation omitted).  Plaintiffs need not know all of the facts underlying their ASA claim to trigger accrual.  *See id.*  Rather, the statute of limitations begins to run when Plaintiffs, exercising reasonable diligence, "suspected" that Defendants had misrepresented material facts in the Official Statement.  *See Aaron v. Fromkin*, 994 P.2d 1039, 1043 (Ariz. Ct. App. 2000).

Between October 14, 2024 and July 24, 2015, Plaintiffs received five bondholder disclosures.[2]  These disclosures establish that Plaintiffs' ASA claim

---

[2] The district court did not abuse its discretion in taking judicial notice of a Standard & Poors ("S&P") notice from December 17, 2014, and a notice from Vieste to bondholders on July 24, 2015.  Both notices are matters of public record and the district court did not rely on the veracity of their contents.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (holding that courts may

began to accrue no later than July 24, 2015.

On October 14, 2014, Vieste informed bondholders that there was a "delay in achieving full scale Commercial Operation" because the waste delivered by Glendale "had substantial amounts of yard waste," which Vieste believed was "specifically excluded as 'unacceptable' waste" in its agreement with Glendale. Vieste acknowledged that the "most prudent course of action" would be "to retrofit the facility to include yard waste." On December 12, 2014, notices were sent seeking bondholder consent for Vieste to secure debt financing to retrofit the facility for yard waste. The notice informed bondholders that Glendale would not remove yard waste from the waste stream and that this dispute had "serious adverse effects on the project." On December 17, 2014, S&P notified the bondholders that it had downgraded the bonds from A+ to BBB-, citing the yard waste dispute.

On April 24, 2015, after the bonds went into payment default, Vieste disclosed to bondholders that Glendale had filed a lawsuit against Vieste in state court seeking, among other things, a declaration that Glendale did not have to remove yard waste from the waste stream before delivering it to the facility.

---

judicially notice that statements in public records were made, without noticing the correctness of those statements), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).

Finally, on July 24, 2015, Vieste disclosed to bondholders that the state court had denied Vieste's motion for judgment on the pleadings, finding that there was no provision in the relevant agreement that explicitly required Glendale to remove yard waste. Rather, the state court observed that "certain provisions of the [agreement] arguably suggest a different meaning and intent than that advanced by [Vieste]."

Taken together, these notices were sufficient to put Plaintiffs on notice of a claim that Vieste had misrepresented the facility's design and its ability to generate revenue to repay the bonds.[3] Thus, Plaintiffs' ASA claim began to accrue no later than July 24, 2015. Because Plaintiffs did not file their complaint until April 27, 2018, the district court did not err in dismissing the ASA claim as barred by the two-year statute of limitations.

2. The district court also did not err in finding that Plaintiffs failed to establish reliance for their common law claims. Under Arizona law, reliance is an essential element of both fraud and negligent misrepresentation claims.[4] *See*

---

[3] Glendale made no representations in the Official Statement.

[4] Because Plaintiffs' aiding and abetting claim is derivative of their fraud and negligent misrepresentation claims, if Plaintiffs' fraud and negligent misrepresentation claims fail, their aiding and abetting claim also fails. *See Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund*, 38 P.3d 12, 23 (Ariz. 2002) (claims of aiding and abetting tortious conduct require proof that the primary tortfeasor committed a tort that caused injury to the plaintiff).

*Echols v. Beauty Built Homes, Inc.*, 647 P.2d 629, 631 (Ariz. 1982) (fraud); *St. Joseph's Hosp. & Med. Ctr. v. Rsrv. Life Co.*, 742 P.2d 808, 817 (Ariz. 1987) (negligent misrepresentation). None of Plaintiffs' witnesses involved in the decision to purchase the bonds—Paul Jungquist, Erik Nelmark, and David O'Toole—had a recollection of which statements they read and relied upon in the Official Statement. Nevertheless, Plaintiffs contend that the district court erred by not considering that each witness had a habit of reviewing and relying on official statements to make investment decisions.

However, the testimonies of Jungquist, Nelmark, and O'Toole were insufficient to establish reliance. First, Jungquist admitted that he never read the Official Statement before the bonds were purchased. Second, Nelmark did not testify to a habit of reviewing official statements. Rather, Nelmark testified that his review of a bond transaction depended on the bond rating and its business sector. Nelmark could not say for sure if he would even look at the revenue or projections of an A+ rated bond. Finally, O'Toole did testify that he conducts a "high-level review" of official statements, and he had a "specific recollection of reviewing the Official Statement" at issue in the instant case, but he could not recall the "depth of [his] review" or identify a "single false or affirmative fact" or

even a section in the Official Statement that he relied upon.[5]  The district court thus did not err in granting summary judgment to Defendants for Plaintiffs' failure to establish reliance.

**AFFIRMED.**

---

[5] Subsequently, O'Toole supplied a declaration in support of Plaintiffs' opposition to Defendants' motion for summary judgment in which he identified for the first time several purportedly false statements from the Official Statement on which he allegedly relied in deciding to purchase the bonds.  But because this declaration contradicts O'Toole's own prior testimony, the district court did not abuse its discretion in excluding O'Toole's declaration as a sham affidavit. *See Yeager v. Bowlin*, 693 F.3d 1076, 1079–80 (9th Cir. 2012).